## Corbin *v.* Philadelphia.

*Negligence—Measure of duty—Province of jury.*

Circumstances may beget duties, which, under ordinary circumstances, cannot be implied; and, when such circumstances are shown to exist, the question arising therefrom is not for the court, but for the jury.

*Negligence—Contributory negligence—Attempt to save life.*

One who voluntarily incurs peril caused by the negligence of another, in order to save the life of one imperiled by the same negligence, is not debarred from recovery upon the ground of his own contributory negligence.

The law has so high a regard for human life, that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness in the judgment of prudent persons.

*Negligence—Municipalities — Contributory negligence—Attempt to save life—Hole in street—Gas.*

A city in an attempt to find an old sewer excavated a hole in a street to the depth of twenty-eight feet, when the work had to be abandoned, because the gas had become so strong that workmen could no longer remain at the bottom of the hole. The hole was near a large vacant lot where boys were in the habit of playing ball. A few days after the work had been abandoned, a ball was knocked into the trench, and a boy went down after it. After reaching the bottom, and after he had started the ascent, he was overcome by the gas, and fell back with his face to the ground. Plaintiff's son, another boy, seeing what had happened, went down to his rescue, but was overcome by the gas and died. The first boy revived and came to the top unassisted. There was evidence that other boys had gone down into the hole and come back again. No warning had been given by the city to the public that there was gas in the hole. An action was brought by the mother of the boy against the city to recover damages for his death. *Held,* (1) that the question of the city's negligence was first to be decided by the jury; (2) that if the city was negligent then the question whether under all the circumstances the deceased was justified in making the attempt which he did, was for the jury. GREEN, C. J., MITCHELL and FELL, JJ., dissented.

Argued March 20, 1899. Reargued Jan. 2, 1900. Appeal, No. 338, Jan. T., 1898, by plaintiff, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1896, No. 167, on verdict for defendant, in case of Ellen C. Corbin, mother and surviving parent of William S. Corbin, deceased, *v.* City of Philadelphia. Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Reversed.

Trespass for death of plaintiff's son.

The facts appear by the opinion of the Supreme Court.

The court gave binding instructions for defendant.

Verdict and judgment for defendant.    Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Rudolph M. Schick*, for appellant.—Whenever the standard of duty shifts, not according to any fixed rule, but with the facts and circumstances developed at the trial, the question of negligence cannot be determined by the court, but must be submitted to the jury: Penna. R. Co. v. Peters, 116 Pa. 215.

Corbin was not guilty of contributory negligence: Weiss v. Penna. R. Co., 79 Pa. 387; Eckert v. Long Island R. R. Co., 43 N. Y. 503; Spooner v. D., L. & W. R. R. Co., 115 N. Y. 22; Linnehan v. Sampson, 126 Mass. 506; Donahoe v. Wabash, etc., R. R. Co., 83 Mo. 560; Penna. Co. v. Langedorf, 48 Ohio, 316; Maryland Steel Co. v. Marney, 88 Md. 482.

The question of the city's negligence was for the jury: Wood on Nuisance, sec. 111; Fletcher v. Rylands, L. R. 1 Exch. 265; Hauck v. Pipe Line Co., 153 Pa. 366; Barthold v. City, 154 Pa. 109; Schilling v. Abernethy, 112 Pa. 437; Hydraulic Works Co. v. Orr, 83 Pa. 332; Peyton v. Texas & Pacific Ry. Co., 41 La. Ann. 861.

*E. Spencer Miller*, assistant city solicitor, for appellee.—The city was not negligent: Rodgers v. Lees, 140 Pa. 475; Westerberg v. Kinzua, etc., R. R. Co., 142 Pa. 471; Hummell v. P. & R. R. R. Co., 44 Pa. 375; Flower v. Penna. R. Co., 69 Pa. 210; Cauley v. Pittsburg, etc., Ry. Co., 98 Pa. 498; Duff v. Allegheny, etc., R. R. Co., 91 Pa. 458; Hestonville, etc., Ry. Co. v. Connell, 88 Pa. 520; Moore v. Penna. R. Co., 99 Pa. 301; Baltimore & Ohio R. R. Co. v. Schwindling, 101 Pa. 258; Oil City, etc., Bridge Co. v. Jackson, 114 Pa. 321; McMullen v. Penna. R. Co., 132 Pa. 107.

A deliberate resolve, upon the part of any individual, to do that which is not according to the proper use or treatment of things, breaks the causal connection between the existing conditions which such individual makes the means or location of

his act and the accident, so that those conditions are not the proximate cause of any ensuing injury to such individual. In this view it is not important whether the individual be old or young: Gramlich v. Wurst, 86 Pa. 74.

In various other states the question whether a rescuer attains, by his voluntary act, a better claim against an alleged negligent defendant, than the person whose place he chooses to take, has been raised and decided. The cases are as follows: Donahoe v. Wabash, etc., R. R. Co., 83 Mo. 560; Clark v. Famous Shoe & Clothing Co., 16 Mo. App. 463; Spooner v. Delaware, etc., R. R. Co., 115 N. Y. 22; Peyton v. Texas & Pacific Ry. Co., 41 La. Ann. 861; Linnehan v. Sampson, 126 Mass. 506; Cottrill v. Chicago, etc., R. R. Co., 47 Wis. 634; Pennsylvania Co. v. Roney, 89 Ind. 453; Central R. R. Co. v. Crosby, 74 Ga. 737.

OPINION BY MR. JUSTICE BROWN, April 17, 1900:

The son of plaintiff lost his life in going to the rescue of an imperiled fellow-being. He bravely descended into danger and found awaiting him the death from which he would have saved another. The endangered boy came back from his peril and lived, and we must now determine whether the mother of the deceased can be pecuniarily compensated for the loss she has sustained, or must be content with the consolation that her son died a heroic death. She makes claim against the city of Philadelphia, alleging that its negligence was responsible for the damages she has suffered, and, unless sufficient proof to sustain her allegation was submitted to the jury, she cannot recover. The primary question involved is, the alleged negligence of the city; for, if it was "guiltless of all wrong," it is not liable to her; and, no matter how heroically her son may have given up his own life in going down into danger to save another, her appeal to the law to compel the appellee to compensate her is in vain. The learned trial judge, after the testimony on each side had been submitted to the jury, directed a verdict for the defendant, giving no reasons for so taking the case from their consideration. His judgment may have been that there was no sufficient evidence to establish the negligence of the defendant, or he may have thought that, even if the city was negligent, the rescuer's conduct was such as to prevent a recovery. To properly dispose of this appeal, we must pass

upon both these questions, and first take up what we have said
is the primary one, reviewing the evidence, in the light of which
must be found the right of the plaintiff or the immunity of the
defendant.

In the summer of 1896, the city of Philadelphia had dug
several trenches on the north side of Clearfield street, west of
Fifth street, in an attempt to locate an old sewer that had been
constructed many feet below the surface of the street. After
having excavated to the depth of twenty-eight feet, according
to the testimony of John Abel, called as a witness by the city,
the effort to find the sewer was abandoned, because the gas
had become so strong at that depth that workmen could no
longer remain at the bottom of the trenches. The clear pre-
ponderance of the testimony is, that, for several days before
Corbin went down to his death in one of these trenches, work
had been abandoned by the city for the reason stated; and it
seems to be equally clear that the ordinary safeguards to pro-
tect the passing public from falling into these holes had not
been provided, though the absence of such protection is not
material in determining the questions that confront us. The
plaintiff makes no claim that she lost the supporting arm of her
son because he had fallen into a hole or ditch, negligently left
unguarded by the city, with no notice to the passerby that a
pitfall was before him; but her complaint is, that, though these
trenches were open and notorious, avoidable by all who traveled
the street, no sign had been made, no warning given, of the
death which the city knew lurked below, and to which at any
time, the unsuspecting might descend. These trenches had
been dug in a street in a populous portion of the city. A
church, attended by 600 or 700 children was within 100 feet of
them, and a public schoolhouse within a square. At the time
Corbin met his death it was vacation, and the school building
was closed; but the lot on the north side of Clearfield street,
immediately north of these trenches, extending a whole square,
from Fifth street to Sixth street, was open, having no buildings
on it, and was used as a playground. Boys were constantly
playing ball upon it, and, on Saturdays, after the factories had
closed, hundreds of tired men and boys went to it for the recrea-
tion found in their innocent games. Under these admitted con-
ditions, the trenches were dug, and work finally suspended upon

them on account of the deadly gas that had accumulated at the bottom. This the city knew, and apparently, for days; but it gave no notice to the passerby of the danger in these holes, and the hundreds who congregated on the adjoining playground had no warning that it might mean to go down to death to go after a ball, which, in their sports, might be accidently batted or thrown into the trenches. On the afternoon of August 5, 1896, boys were playing ball on this vacant lot, and their ball rolled down into one of these trenches. Corbin, the deceased, who with a companion, was near, said, " Let us get the ball for the poor boys," and walked over to the trench. Before reaching it, however, a boy named Walker had gone down to get the ball, there having been crosspieces of wood in the trench, from side to side, making practically a ladder to the bottom. The boy Walker, after reaching the bottom got the ball and started to ascend; but when he had reached the first crosspiece, fell back, with his face to the ground. Corbin then went down to his rescue, but was overcome by the gas and died. Walker revived, came to the top unassisted and walked away.

It is insisted that the city of Philadelphia was not bound to anticipate the descent of any one into this danger, and, therefore, not negligent in failing to adopt proper means for the exclusion of all persons from these holes. We cannot sustain this view. If the city was negligent, it was liable for the consequences of its neglect, though those consequences were not and could not, by any ordinary prudence, have been anticipated: Oil City Gas Co. v. Robinson, 99 Pa. 1. These trenches were across a public street, along which men and women daily passed, and with no notice or warning of the deadly danger below, and, with the easy means of descent, can it be seriously questioned that the city ought not to have anticipated that what did happen might happen? Ought it not reasonably to have been anticipated that, if the hat of a passerby should be carried by the wind from his head to the bottom of one of these holes, he would most naturally go or send some one down to recover it? The veil or handkerchief of a passing woman might be blown into the trench, and he who would not anticipate her clamor that someone go down and get it for her, and that chivalrous response would be instantly made, knows little of human nature. Under the circumstances, the city ought to have anticipated

descents into these holes; but we need not conjecture what its anticipations ought to have been, for, before Walker went down to get the ball, others had been down. Stromen testifies that he went down to get a ball on the Tuesday before Corbin's death, and Roth states that he had seen a boy go down for a ball "to the last round, and get the ball." Stromen says he did not stay long on account of the gas; that a funny feeling came over him and he had a "hard time" getting up. Emil Hagan says he saw a boy go down before August 5. Why should Stromen and these boys not have gone down for the ball? The amusement and recreation of playing ball were lawful, and the probabilities that the ball might be knocked or thrown into the trench were great; but the city had given no warning of the danger and, perhaps, death which, according to the testimony submitted, it must have known were at the bottom of the hole.

If it is true, as has often been said, that circumstances beget duties, the duty of the city, after discovering the dangerous gas in the trenches and its effect upon the workmen, was clearly to give notice and warning of it to the public, and to promptly take steps to prevent a descent into it, not unlikely to occur at any time from causes already suggested and others that might be mentioned.

In Hydraulic Works Co. v. Orr, 83 Pa. 332, there was a platform in a private alley, communicating with a public street. This platform was raised and lowered for the convenience of the company in receiving and shipping goods, and when not in use, was kept in place by inclining against the wall, without any fastening. At the entrance to the alley were gates, which were opened and shut, as necessity required, and upon them was posted, "Private; No Admittance;" and yet a child having strayed into this private alley and having been caught under the platform, which tilted over on it, in an action brought by the parents to recover damages for its death, it was held that the negligence of the company was properly submitted to the jury. It was there said by Chief Justice AGNEW: "But it has been often said, duties arise out of circumstances. Hence where the owner has reason to apprehend danger, owing to the peculiar situation of his property and its openness to accident, the rule will vary. The question then becomes one for a jury, to be determined upon all its facts of the probability of danger

and the grossness of the act of imputed negligence. Such was the nature of this case. This building was a factory in which several kinds of business were carried on in different stories, requiring the use of a hoisting apparatus above and an inclined plane below for the easy carriage of heavy articles, machinery, etc., into and out of the factory. These appliances were approached by means of a private opening or cartway shut in by a gate, which their use required to be often opened for the ingress of wagons and hands engaged in the business. The gate and passageway opened out upon a public and much frequented street, where persons were passing and children playing. Unlike an ordinary private alley, this passage was often open, and, therefore, liable to the incursions of children, and even grown persons, from thoughtlessness, accident or curiosity. Now, the inclined way, which did the injury, was a dangerous trap. It was a heavy platform, weighing eight or nine hundred pounds, attached by hinges within eighteen or twenty inches of the wall, and, when lowered, it fell across the cartway. When not lowered, it stood upright against the wall, leaning so little beyond the center of gravity that a jar or a slight pull would cause it to fall forward. Its fall, in this instance, caught four children beneath it; one had his back broken, another his hands mashed, and two escaped under the cavity. It was held up by no hook or other fastening, but merely rested by its own slight weight beyond the equipoise, ready therefore, to catch children, like mice beneath a deadfall. When wagons passed, it was often held up by hand, and à witness saw it fall against the wheels. Now, can it be righteously said that the owner of such a dangerous trap, held by no fastening, so liable to drop, so near a public thoroughfare, so often open and exposed to the entries of persons on business, by accident, or from curiosity, owes no duty to those who will be probably there? The common feeling of mankind, as well as the maxim sic utere tuo, ut alienum non laedas, must say this cannot be true, that this spot is not so private and secluded as that a man may keep dangerous pits or deadfalls there without a breach of duty to society. On the contrary, the mind, impelled by the instincts of the heart, sees at once that in such a place, and under these circumstances, he had good reason to expect, one day or other, some one, probably a thoughtless boy in the buoyancy of play, would

be led there, and injury would follow, especially, too, when prompted by knowledge that a fastening was needed." In Schilling v. Abernethy, 112 Pa. 437, following the case just cited, it is said, that circumstances may beget duties, which, under ordinary circumstances, cannot be implied; and, when such circumstances are shown to exist, the question arising therefrom is not for the court, but for the jury.

Abel, the city's inspector of the sewer, and called as its witness, testifies that work had been abandoned on account of the gas, and if it be true, as testified by several witnesses called by plaintiff, that no workmen had been about the trenches for several days before Corbin's death, how can it be righteously said that the city was not derelict in its duty? On the other hand he states that workmen were on the premises until 12 o'clock of that day; and another witness, called by the plaintiff, testifies that, immediately after .the death a watchman was placed at the trenches, which were filled up the next day. Abel, evidently having felt that some precaution ought to be taken by the city to guard against this danger, said that, when he left the work at 2 o'clock, about two hours before the death of Corbin, he ordered Jim January to remain at the trenches until 6 o'clock, and then light a lamp. These directions were disregarded, for no watchman was on the premises at the time of the accident. Under the facts developed on this trial, the jury should have passed upon the question of the city's negligence, and, if the learned trial judge was of opinion that sufficient had not been submitted to sustain plaintiff's allegation that it was culpable, he was in error.

Assuming the city to have been guilty of negligence, was the conduct of Corbin such, in going to the rescue of Walker as to prevent a recovery by the plaintiff? In other words, is she debarred from recovery because her son was guilty of contributory negligence in voluntarily incurring peril in an effort to save the life of Walker, which had been endangered by the negligence of the city? This is an interesting and most important question, but free from difficulty, in the light of reason and the thoughtful consideration it has received from many high tribunals. A rescuer, one who, from the most unselfish motives, prompted by the noblest impulses that can impel man to deeds of heroism, faces deadly peril, ought not to hear from the law

words of condemnation of his bravery, because he rushed into danger, to snatch from it the life of a fellow creature, imperiled by the negligence of another; but he should rather listen to words of approval, unless regretfully withheld on account of the unmistakable evidence of his rashness and imprudence. This conscience and reason approve, and the best judgment of thoughtful and intelligent judges has declared it to be the law of the land. Relying, as we safely can, upon the considerate judgment of other courts on this important question raised before them, we cannot better dispose of it than by calling attention to what they have said, adding in every case our approval of what was declared to be the reason of the law as announced.

We first call attention to Eckert v. Long Island Railroad Co., 43 N. Y. 503, fairly regarded as the leading case upon the subject, and extend our indorsement to it, as well as to the authorities subsequently cited. We quote at length from this case as follows: " The important question in this case arises upon the exception taken by the defendant's counsel to the denial of his motion for a nonsuit, made upon the ground that the negligence of the plaintiff's intestate contributed to the injury that caused his death. The evidence showed that the train was approaching in plain view of the deceased, and had he, for his own purposes, attempted to cross the track, or, with a view to save property, placed himself voluntarily in a position where he might have received an injury from a collision with the train, his conduct would have been grossly negligent, and no recovery could have been had for such injury. But the evidence further showed that there was a small child upon the track, who, if not rescued, must have been inevitably crushed by the rapidly approaching train. This the deceased saw, and he owed a duty of important obligation to this child to rescue it from its extreme peril, if he could do so without incurring great danger to himself. Negligence implies some act of commission or omission wrongful in itself. Under the circumstances in which the deceased was placed, it was not wrongful in him to make every effort in his power to rescue the child, compatible with a reasonable regard for his own safety. It was his duty to exercise his judgment as to whether he could probably save the child without serious injury to himself. If from the appearances, he believed that he could, it was not

negligence to make an attempt so to do, although believing that possibly he might fail and receive an injury himself. He had no time for deliberation. He must act instantly, if at all, as a moment's delay would have been fatal to the child. The law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness in the judgment of prudent persons. For a person engaged in his ordinary affairs, or in the mere protection of property, knowingly and voluntarily to place himself in a position where he is liable to receive a serious injury, is negligence, which will preclude a recovery for an injury so received; but, when the exposure is for the purpose of saving life, it is not wrongful, and therefore, not negligent, unless such as to be regarded either rash or reckless. The jury were warranted in finding the deceased free from negligence under the rule as above stated. The motion for a nonsuit was, therefore, properly denied. That the jury were warranted in finding the defendant guilty of negligence in running the train in the manner it was running, requires no discussion." Approving this case, the same court, in Spooner v. D., L. & W. R. R. Co., 115 N. Y. 22, held that, if the plaintiff stepped upon the track of the railroad company in the humane effort to save younger children from danger, she was not a trespasser, and the verdict in her favor for the injury she suffered in trying to save the little children was sustained.

In Gibney v. The State of New York, 137 N. Y. 1, plaintiff with her husband and infant son was crossing a bridge over the Erie canal, the son fell into the canal through an opening in the railing of the bridge, which had been left unguarded; the father plunged into the canal to rescue him, and both were drowned. Plaintiff recovered for the damages she had sustained, and, in affirming the judgment of the lower court, it was held that, while the immediate cause of the peril to which the father naturally and instinctively exposed himself was the peril of the child, the cause of the peril in both cases might be attributed to the culpable negligence of the state in leaving the bridge in a dangerous condition. In this case, Eckert v. Long Island R. R. Co. was again approved.

It was held in Peyton v. Texas and Pacific Railway Co., 41

La. An. 861, that the law has so great a regard for human life that it will not impute negligence to an effort to preserve it, if the effort is made with a reasonable regard for the rescuer's own safety, and, where negligence on the part of the defendant is shown, the negligence of the person in danger cannot be imputed to the rescuer. In the case before us, under the clearly established facts, no negligence can be imputed to Walker.

The question of the contributory negligence of a rescuer is considered in Linnehan v. Sampson, 126 Mass. 506, where it was contended, on behalf of the defendant, that the calls of humanity did not excuse him. It was held, however, that the question whether the plaintiff's conduct on the occasion of the injury was wanting in reasonable prudence and caution, in view of all the circumstances, was properly submitted to the jury as a question peculiarly for them to decide: "They were to consider all the circumstances, and, among other things, that the life of a fellow creature was in extreme danger; but they must have understood that reasonable prudence and caution were elements in the case which plaintiff must prove. . . . The emergency was sudden, allowing but little time for deliberation. Some allowance might well be made for the confusion of the moment. . . . The law does not require cowardice or absolute inaction in such a state of things. Neither does it require, in such an emergency, that the plaintiff should have acted with entire self-possession, or that he should have taken the wisest and most prudent course, with a view to his own self-preservation, that could have been taken. He certainly may take some risk upon himself, short of mere rashness and recklessness."

In Donahoe v. Wabash, St. Louis & Pacific Railway Co., 83 Mo. 560, it was ruled that the negligence of the company as to the person in danger was to be imputed to the company with respect to him who attempted the rescue.

It is not negligence per se for one to voluntarily risk his own safety or life in attempting to rescue another from impending danger. The question whether one so acting should be charged with contributory negligence in an action brought by him to recover damages for injuries received in attempting the rescue, is one of mixed law and fact, and should be submitted to the jury, upon the evidence, with proper instructions from the court. While one who rashly and unnecessarily exposes him-

self to danger cannot recover damages for injuries thus brought on himself, yet, where another is in great and imminent danger, he who attempts a rescue may be warranted, by surrounding circumstances, in exposing his limbs or life to a very high degree of danger. In such case, he should not be charged with the consequences of errors of judgment resulting from the excitement and confusion of the moment; and, if he did not act rashly and unnecessarily expose himself to danger, and is injured, the injury should be attributed to the party that negligently or wrongfully exposed to danger the person who required assistance: Pennsylvania Co. v. Langendorf, 48 Ohio, 316.

The late and well considered case of the Maryland Steel Co. of Sparrows' Point v. Marney, 88 Md. 482, sustains the views expressed in the foregoing authorities, and by their " aid," it was again ruled that one who voluntarily incurs peril caused by the negligence of another, in order to save the life of one imperiled by the same negligence, is not debarred from recovery upon the ground of his own contributory negligence.

Recognizing the manifest correctness of the views expressed in the foregoing and other cases, the best text writers have properly adopted them as the law for guidance of courts and juries. When one risks his life, or places himself in a position of great danger, in an effort to save the life of another, or to protect another who is exposed to a sudden peril or in danger of great bodily harm, such exposure and risk for such a purpose are not negligent. The law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness in the judgment of prudent persons: Beach on Contributory Negligence, section 15. One who imperils his own life for the sake of rescuing another from imminent danger is not chargeable, as a matter of law with contributory negligence, and, if the life of the rescued person was endangered by the defendant's negligence, the rescuer may recover for the injuries which he suffered from the defendant in consequence of his intervention: Shearman & Redfield on Negligence, section 85.

In view of what we have said, and in the light of the authorities approvingly cited, this case was improperly disposed of by the court below and must be sent back for another trial, that a jury may pass upon the question of the city's negligence and

determine whether Corbin, under the circumstances, acted with a due regard for his own safety, or so rashly and imprudently that his surviving mother cannot recover for the loss she has suffered. In passing upon this latter question, it will be remembered, on the one hand, that, looking down and seeing the prostrate and motionless form of Walker, he may have been sufficiently warned not to descend into the danger, and his conduct may have been so rash and imprudent that, in the judgment of a jury, there ought not to be a recovery; on the other, it will not be forgotten that he had no time for deliberation, and was bound to act, if at all, instantly, as a moment's delay might have made his going down too late; and it will be still further remembered that, shortly before the day of his death, others had gone down into the trenches and returned unharmed; that the very boy whom he would have saved came back unaided from the bottom of the hole, and that those who went down for him came up uninjured. What the verdict of the jury should be it is not for us to say, and we do not pretend to intimate. Our duty is simply to direct that, intelligently instructed, they pass upon the questions involved. Theirs will be to render a just finding.

It is finally contended on behalf of the city, that it is not liable, because the alleged negligence was that of an independent contractor. As to this defense, it need only be said that, under the evidence offered by the city itself, it is without merit. For the reasons given the judgment is reversed and a venire facias de novo awarded.

MR. JUSTICE MITCHELL, dissenting:

I cannot see that the city was guilty of any negligence that contributed to the accident. It had obstructions around the ditch sufficient to indicate that the place was dangerous. If one had fallen in at night, the obstructions might be held insufficient, and it may even be admitted so far as this case is concerned that if one going down in daytime with only the apparent risk of the descent before him, had ignorantly encountered the gas, he might have had an action for negligence in failing to warn him of the concealed danger. But any such negligence is wholly irrelevant to this case. Corbin saw the danger from the condition of the boy Walker, went into it knowingly, and

would not have been deterred by a warning placard however specific.

There is therefore in my view only one question in the case, and that is whether the circumstances exonerated Corbin from the ordinary legal consequences of his act. I cannot see how the goodness or humanity of his motives can either exempt him or transfer the risk he ran to the city. It is a clear case for the application of the principle volenti non fit injuria.

If a known danger is encountered in the performance of a specific duty, as in the case of risks taken by a fireman or a policeman a different question is presented, but there was nothing of this kind here for Corbin was a pure volunteer.

I have read the opinions cited by my Brother BROWN with close attention to discover from them some recognized principle of law to sustain the results arrived at. But I find nothing beyond an emotional basis of admiration for heroism, very creditable to human nature but having no proper place in the administration of justice.

I would therefore affirm this judgment both on the absence of any negligence by the city which contributed to the accident, and on the voluntary character of Corbin's assumption of a known risk.

GREEN, C. J., and FELL, J., join in this dissent.