ATLANTA & W. P. R. CO. v. GREEN.

(Circuit Court of Appeals, Fifth Circuit. December 21, 1917.)

No. 3042.

1. NEGLIGENCE ☞25—WHAT CONSTITUTES—ATTRACTIVE NUISANCE.
    It is actionable negligence for one to leave unguarded, on a part of his premises which he knows is frequented by children for purposes of play, a dangerous thing, which may be fatal to any one who touches it, without taking any precaution against the mischief likely to result.

2. NEGLIGENCE ☞32(2)—LANDOWNERS—LIABILITY.
    A landowner, who leaves on his premises, which are frequented by children, an unguarded dangerous agency, is liable to a third person who, without negligence on his part, is injured in an attempt to rescue the child or children in peril.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3.** ELECTRICITY ☞19(2)—PLEADING—DEMURRER—SCOPE.

Plaintiff's petition alleged that between a thickly settled street and the tracks of the defendant company there was a strip of land covered with grass, uninclosed, which was customarily used by children in the neighborhood as a playground, and that defendant made no objections to such use. The petition further alleged that cables of wires transmitting electricity in volume sufficient to instantly kill a human being, from an electric plant on one side of defendant's tracks to a customer on the other side, fell in a heavy storm and were severed by a passing train; that a short while thereafter defendant's section hand removed the cables, throwing them on the grass-covered plot used by children as a playground, although knowing at that time that they were heavily charged with electricity; that one of the wires came in contact with the grass and ignited it, and some of the children, seeing the fire, went to that place and began to jump over it, whereupon plaintiff's husband, realizing the danger of the children, approached the fire to save them, but in going to the place where the children were playing stepped on the live wire and was instantly killed. *Held* that, though the complaint might be subject to criticism on the ground that the word "children," as used with reference to those playing and jumping across the fire, was defective in not showing that they were immature persons of insufficient capacity to be capable of guarding against the peril to which they were exposed, that defect could not, under Georgia practice, be raised by general demurrer, and as against general demurrer the petition must be deemed sufficient; the word "children" being used in its common acceptance.

**4.** TRIAL ☞143—PROVINCE OF JURY—CONFLICTING EVIDENCE.

An issue is for the jury when the evidence is conflicting.

In Error to the District Court of the United States for the Northern District of Georgia; William T. Newman, Judge.

Action by Mrs. Etta Green against the Atlanta & West Point Railroad Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

P. H. Brewster and Arthur Heyman, both of Atlanta, Ga. (Brewster, Howell & Heyman, of Atlanta, Ga., and A. H. Thompson, of La Grange, Ga., on the brief), for plaintiff in error.

Lester C. Slade and H. H. Swift, both of Columbus, Ga., George Westmoreland, of Atlanta, Ga., and Sidney Holderness, of Carrollton, Ga. (Meadors & Wyatt, of La Grange, Ga., on the brief), for defendant in error.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

WALKER, Circuit Judge. This was an action by the defendant in error, Mrs. Etta Green (hereinafter called the plaintiff), to recover damages for the death of her husband. Her petition averred the following state of facts:

The plaintiff, her husband, and their three children resided in the city of La Grange on a street running parallel with the track of the plaintiff in error railway company (which will be called the defendant). That street was thickly settled, and there were a great many children in the neighborhood, which facts were known to the defendant. Between that street and the defendant's track there was a strip of land belonging to the defendant. That strip was covered with grass, was

uninclosed, ordinarily was a safe playground for children, and, with the knowledge of the defendant and without objection from it, was used by the children of the neighborhood as a playground. Cables or wires which transmitted electricity, in volume sufficient to kill instantly a human being, from an electric plant on one side of the defendant's railroad to a customer of the operator of the plant on the other side of the railroad, were strung on poles, one of which, during a heavy wind and rain, fell, resulting in the wires strung to it being thrown onto and across the rails of defendant's track. Soon after this occurred a train operated by the defendant passed the point at which the wires or cables were upon the track and severed them. In a short while thereafter a section master of the defendant, assisted by the section hands under him, removed the fallen wires or cables from the track and threw them on the above-mentioned strip of land, knowing at the time that the wires were heavily charged with electricity and were likely to be hidden by the grass which covered the ground where the severed wires were left. An end of one of the wires came in contact with the grass and ignited it. Some children saw the fire, went to the place where it was, and played at jumping over the wire. Some time after the wires were blown down, and after they had been removed from the track to the above-mentioned strip of land, the plaintiff's husband, when he reached his gate in going to his residence, saw the children jumping over the wire where the grass was burning, and, realizing the danger of their doing so, approached to warn and save them; and, as he was doing so, being intent on the danger the children were in and looking at them and the fire, he stepped on a wire which was hidden in the grass, came in contact with the electric current, and was instantly killed. The defendant negligently left the severed wires, known to be heavily charged with electricity, at the place to which they were removed from the track, without guarding the same, or giving any warning to children or any one else of the danger incident to their presence there.

[1-3] It is actionable negligence for one to leave unguarded on a part of his own premises, which he knows is frequented by children for purposes of play, a dangerous thing, which may be fatal to any one who touches it, without taking any precaution against the mischief likely to result. Union Pacific Railway Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434. And such person is liable to a third person, who, without negligence on the latter's part, is injured in an attempt to rescue the child or children discovered in peril due to such negligence of the proprietor of the premises on which they are playing. Corbin v. City of Philadelphia, 195 Pa. 461, 45 Atl. 1070, 49 L. R. A. 715, 78 Am. St. Rep. 825, and note. It is urged in behalf of the defendant that the plaintiff's petition does not show that the defendant was negligent with reference to the persons whose rescue was being attempted by her husband when he came to his death. The basis of this contention is that the petition describes those persons as "children," and does not specifically aver that they were so young and immature as to be incapable of appreciating and guarding against the peril to which they were exposed. The sufficiency of the petition as a

whole was questioned in the trial court only by a general demurrer, and the particular ground of objection above stated was not there pointed out. The word "children" is appropriate to describe very young persons, such as are not old enough to dispense with protective aid and care. It is such a one that was pictured when it was said:

"When I was a child, I spake as a child, I understood as a child, I thought as a child; but when I became a man, I put away childish things."

The averments of the petition as to what the "children" mentioned were doing when their rescue was attempted graphically show that they had not put away childish things. It is quite questionable whether anything more was needed to be said to show that they were lacking in maturity and capacity to guard against the danger, due to conduct chargeable against the defendant, to which they were exposing themselves. But let it be assumed that the petition was subject to objection on the ground that its description of the persons in behalf of whose safety the deceased was acting when he was killed did not with the certainty and definiteness which may be required show that those persons were so immature as to need to be guarded from a danger which others might be expected to avoid, with the result of making alleged conduct negligent as to them, though it was such as not to be a breach of any duty owing to others of more maturity and capacity. If the petition was defective in not more clearly disclosing that the word "children" was used to describe immature persons, this defect was one of form, and not of substance, which, under the Georgia practice, is not taken advantage of by a general demurrer. East Georgia & Florida R. Co. v. King, 91 Ga. 519, 17 S. E. 939; Western Union Telegraph Co. v. Jenkins, 92 Ga. 398, 17 S. E. 620; Little Rock Cooperage Co. v. Hodge, 105 Ga. 828, 32 S. E. 603. When questioned only by a general demurrer, a petition is to be regarded as averring negligence when the language used, as it is commonly understood, when used as it is used in the pleading, is appropriate to express that meaning.

[4] The evidence adduced was quite conflicting, but a phase of it supported the material averments of the petition. The court was not in error in refusing the defendant's request for an instruction that the jury render a verdict in its favor.

We are not of opinion that there was reversible error in any ruling of the court which is presented for review.

The judgment is affirmed.