### HENWOOD v. BENNETT.

#### No. 5821.

Court of Civil Appeals of Texas. Texarkana.

July 3, 1941.

Rehearing Denied Oct. 16, 1941.

Ramey, Calhoun, Marsh & Sheehy, of Tyler, for appellant.

Fred V. Hughes, of Tyler, for appellee.

WILLIAMS, Justice.

This is a suit by Miss Ollie Bennett, a feme sole, against Berryman Henwood, trustee, St. Louis Southwestern Railway Company of Texas, defendant below, to recover damages alleged to have been sustained as a result of personal injuries received by her when struck by one of defendant's freight trains at or near a public highway crossing at Winona, Texas.

As grounds for recovery plaintiff alleged that the crossing was an extra-hazardous one, and defendant had failed to maintain a "wig-wag" there; had failed to sound the whistle and bell at the time; failed to keep a proper lookout; and had operated the train at a high, rapid and dangerous rate of speed as it approached the crossing; and charged that each was negligence and a proximate cause of the injuries. Plaintiff further alleged that because of alleged negligence of defendant, she and her cattle, which she was attempting to drive across the track, were placed in an imminent and sudden position of immediate peril and danger; that such peril and danger appeared to her to be immediate and imminent and left her no time for deliberation and placed her in an immediate condition of fright, and because thereof she attempted to get her cattle off the track and while so doing was struck by the train. In addition to a general demurrer and general denial, defendant answered by alleging that plaintiff, both prior to and after her discovery of the approaching train, was guilty of certain negligent acts and omissions, which proximately caused and proximately contributed to cause her injuries and damage.

The jury found in response to special issue No. 9 that "the engineer operating the engine on the occasion in question, ran said train in approaching the crossing in question, at a high, rapid and dangerous rate of speed"; to No. 10, that this was negligence; and to No. 11, that such negligence was a proximate cause of plaintiff's injuries. The jury found that defendant did not fail to sound whistle and bell; did not fail to keep proper lookout; and that the failure to maintain an automatic wig-wag was negligence, but was not a proximate cause of the injuries. The jury found also that plaintiff did not fail to keep a proper lookout for her own safety to discover the approach of the train; and that she did not fail to look for the approach of the train from a place from which danger could

be discerned and precautions taken to avoid being struck by the train. The jury answered "Yes" to each of the issues No. 25 to No. 29, inclusive, reading:

No. 25: "Do you find from a preponderance of the evidence that any or all of such negligent acts or omissions on the part of defendant, his servants, or employees, if any you have found, proximately caused, at the time plaintiff actually knew of the oncoming train, fright and apprehension in plaintiff of imminent danger to her cow?"

No. 26: "From a preponderance of the evidence did such fright and apprehension of plaintiff of imminent danger to her cow, reasonably appear to the plaintiff at the time under all of the facts and circumstances shown by a preponderance of the evidence to then exist?"

No. 27: "Do you find from a preponderance of the evidence that the appearance of such danger, if any there was, was so imminent as to leave no time for deliberation by plaintiff at the time?"

No. 28: "Do you find from a preponderance of the evidence that such condition of fright in plaintiff at the time (if you have found such a condition existed) proximately caused plaintiff, at the time, to place herself in a position where she was injured?"

No. 29: "Do you find from a preponderance of the evidence that the plaintiff exercised ordinary care for her own safety on the occasion in question up to the time she became so frightened (if you have found she did so become frightened)?"

The jury further found that plaintiff on the occasion in question and before her injury was in process of using the highway crossing for the purpose of driving her cattle across same and that she was not on the right of way of defendant beyond the limits of the highway crossing when she discovered the approach of the train. Damages were assessed at $2,500.

Defendant's railway runs in a north-south direction through Winona. The Dixie Highway enters at the northern edge, crosses the railroad at right angles, then turns south and runs parallel with and west of the railroad through the town. Practically all the business and residential sections are situated west of the highway, with the agricultural and pasture lands east of the railroad. The right of way was unfenced. Kay's barn is situated 450 feet south of the center of the crossing, the depot is still farther south. For many years plaintiff had lived west of and close to the crossing, and had maintained a small dairy herd. She had for years used the highway crossing in driving her cattle in the morning to her pasture east of the railroad and returning them in the afternoon.

About 7:30 a. m. of April 21, 1939, plaintiff was driving her four cows to the pasture. She claims to have stopped, looked and listened, and then to have proceeded to drive the cattle across. At the time she discovered the approach of the train from the south, three head a little to the south of her had crossed over, the fourth, to the north of her, had stopped on the track. The following extracts from her testimony reflects her acts and her reason for her conduct.

"Well, I saw that train coming, and I think I kinda lost my head when I saw it coming. I was scared. Scared me until I did not know what I was doing at the time. I was scared to death. Most anybody would be scared if they saw a train right on them, wouldn't they?"

"Q. Was one of your cows on the track? A. Yes, sir.

"Q. What did you run down there for? A. Well, I run down there to try to save my cow, and I guess I couldn't have saved her if she hadn't jumped off anyhow. Yes, I saw the train coming. The train whistled about the Kay barn. I turned and looked and saw it.

"Q. Did you see it up at the Kay barn? A. Yes.

"Q. Now, after you saw it coming, what did you do? A. Well, I turned and went down to where that cow was—why, now, it turned and run, and I started over the other way, waving my stick, so I hadn't got no piece 'til the train was on me.

"Q. And then you started to run up North, on the West side of the track? A. Yes, sir.

"Q. Well, you did run Northwest to the track? A. Yes, I did.

"Q. Now you remember that part of the train passes you? A. Just the cow catcher.

"Q. And you had the stick raised, as you were going North up to the heifer, didn't you, you had the stick in your hand? A. Yes, sir; I had the stick in

my hand as I went North after the heifer, and my back was to the oncoming train.

"Q. Now where were you when you saw the train? A. Well, I was right near the highway, but I don't know exactly where."

Griffin, the fireman, testified that plaintiff jumped up and started down the track, that a calf was on the track.

"Q. When you first saw her, how far West of the track was she? A. (Griffin): Twenty feet.

"Q. Now, did she fall, or the train strike her, or something happen to her that morning? A. Well, she had her arm stretched out, with a broom handle in her right hand, it looked like the pilot beam either hit the broom handle or her arm and knocked her down."

Various witnesses placed the speed of the train from 35 to as high as 60 miles an hour. The testimony of other witnesses adds no further details to the picture as reflected in the foregoing.

Under plaintiff's admissions, she discovered and knew of the approach of the train when it was 420 to 450 feet away from her. It is without dispute that she was then at a place of safety. It is further without dispute that after plaintiff had discovered the approach of the train, her subsequent acts and movements caused her to be placed in a position of danger, at which latter place she received the injuries. All her actions lead inevitably to but one conclusion, that she thought her cow was in danger and she impulsively and spontaneously rushed into that danger to rescue it.

Premised upon the court's refusal to grant defendant's motion for an instructed verdict, defendant's attack upon the jury's findings to issues Nos. 9, 10, 11, and Nos. 25 to 29, inclusive, and various exceptions to the submission of such issues, defendant's various propositions assert that under above detailed state of facts plaintiff was guilty of contributory negligence as a matter of law; that her acts, as a matter of law, were the sole proximate cause of her injuries; and that the speed of the train was not as a matter of law a proximate cause of the injuries or a proximate cause of any fright or apprehension that plaintiff might have had of imminent danger to her cow at the time she discovered the approach of the train.

Plaintiff asserts that defendant had known for many years that such crossing was being daily used by plaintiff and others in Winona to drive cattle to and fro across same; that it is a matter of common knowledge that cattle and other live stock are often upon the right of way and tracks, particularly at points where the right of way is not fenced, as here; that defendant was charged with knowledge of the characteristics of cattle, slow, obstinate, and inclined to loiter and graze on the crossing; that defendant should have anticipated that the operation of its train at a high and rapid rate of speed as it approached the crossing would endanger cattle and that defendant should have anticipated that plaintiff, and perhaps others, would attempt to rescue cattle from injury. And under such reasoning and the findings of the jury under issues Nos. 9, 10 and 11, and 25 to 29, inclusive, appellee seeks to sustain the judgment rendered and avoid the legal consequences of her acts in going from a place of safety to a place of danger upon the theory that · where a person through negligence of the tort feasor is suddenly frightened, "his act is regarded in law as would be the movement of an inanimate object set in motion by such (tort feasor) negligence," citing Jackson v. G., H. & S. A. Ry. Co., 90 Tex. 372, 38 S.W. 745; Beck v. Browning, 129 Tex. 7, 101 S.W.2d 546; Texas & P. Ry. Co. v. Watkins, 88 Tex. 20, 29 S.W. 232; International & G. N. Ry. v. Neff, 87 Tex. 303, 308, 28 S.W. 283; Graham v. Hines, Tex.Civ.App., 240 S.W. 1015. To the foregoing may be added Wagner v. International Ry. Co., 232 N.Y. 176, 133 N.E. 437, and cases there discussed in 19 A.L.R. 1.

The foregoing authorities deal with the rule that the person who by his negligence puts another in peril of death or bodily injury is liable to one who is injured in an attempt to rescue such imperiled person; and that it is not contributory negligence for the rescuer to imperil his life or put himself in a position of great danger in his effort to rescue such person from peril, unless his act amounts to rashness or recklessness. We find no decision in Texas and are cited to none where above rule has been extended under such conditions so as to embrace the acts of an adult person in the rescue of imperiled property and exonerate such person of contributory negligence.

In Houston & T. C. Ry. Co. v. Tidwell, Tex.Civ.App., 262 S.W. 810, 813, writ refused, Tidwell v. Houston & T. C. R. Co., 114 Tex. 582, 278 S.W. 1115, which involved a situation in many respects similar to the instant case, it was held "the proximate cause of the injury to appellee was his presence on the track * * *." In Higginbotham v. Gulf, C. & S. F. Ry. Co., Tex.Civ.App., 155 S.W. 1025, 1028, cited with approval in the Tidwell case, which also involved facts somewhat similar to those here, it is stated: "We think that the deceased in remaining upon the track in front of the approaching train was negligent as a matter of law, * * *." For other holdings of similar import, all of which involved acts and situations in many respects similar to the present case, see Foster v. New York Cent. Ry., 115 W.Va. 682, 177 S.E. 871; Eckert v. Long Island Ry Co., 43 N.Y. 502, 3 Am.Rep. 721; Corbin v. City of Philadelphia, 195 Pa. 461, 45 A. 1070, 49 L.R.A. 719, 78 Am.St.Rep. 825; Morris v. Lake Shore & M. S. Ry. Co., 148 N.Y. 182, 42 N.E. 579; McManamee v. Missouri Pac. Ry. Co., 135 Mo. 440, 37 S.W. 119; Cook v. Johnston, 58 Mich. 437, 25 N.W. 388, 55 Am.Rep. 703.

In the face of above holdings we feel unwarranted in extending the above rescue rule. It is therefore concluded that, under the admission of plaintiff and the undisputed facts in this record, plaintiff in leaving a place of safety and going into a place of danger to rescue the cow, whether done voluntarily or impulsively through fright for the safety of her cow, is, as a matter of law, guilty of contributory negligence. Further in support of this conclusion see Bobango v. Erie R. R. Co., 6 Cir., 57 F.2d 667, cited with approval in International-G. N. Ry. Co. v. Lowry, 132 Tex. 272, 121 S.W.2d 585; Seale v. Gulf, C. & S. F. Ry. Co., 65 Tex. 274, 57 Am. Rep. 602, cited with approval in Texas & P. Ry. Co. v. Mercer, 127 Tex. 220, 90 S.W.2d 557, 93 S.W.2d 376, 106 A.L.R. 1299; Gulf, C. & S. F. Ry. v. Gaddis, Tex. Com.App., 208 S.W. 895.

The conclusions reached eliminate the necessity of a discussion of the other matters presented.

The judgment is reversed and the cause remanded.

On Motion for Rehearing.

Appellee's motion to set aside the judgment heretofore entered in this court and affirm the judgment of the trial court is overruled.

The court having reached the conclusion, as stated in the opinion, that plaintiff was guilty of contributory negligence as a matter of law, and the evidence having been fully developed upon this phase of the case, appellant's motion to set aside the judgment heretofore entered and to reverse and render judgment for appellant is granted, and it is accordingly so ordered.