WOODRUFF ELECTRIC CO-OP *v.* WEIS BUTANE GAS CO., ET AL.

5-667                                    279 S. W. 2d 564

Opinion delivered May 30, 1955.

*Norton & Norton* and *John D. Eldridge, Jr.,* for appellant.

*Daggett & Daggett, Mann & McCulloch, Ronald A. May* and *Wright, Harrison, Lindsey & Upton,* for appellee.

ED. F. MCFADDIN, Justice. This is the second appeal of this case.* The first appeal involved only the matter of venue: the present appeal challenges the giving and refusing of certain instructions in the trial. The appellant is Woodruff Electric Cooperative Corporation (hereinafter called "Woodruff"). The appellees are Woodrow James (an individual) and Weis Butane Gas Company (hereinafter called "Weis Butane").

This case resulted from a series of traffic mishaps which occurred on U. S. Highway 79 about 2½ miles west of Marianna. At the place of the traffic mishaps the highway runs in an east and west direction; the concrete pavement is 23 feet wide with a suitable gravel shoulder, dirt shoulder and borrow pit on each side of the highway. About 6 p. m. February 27, 1951, a Chevrolet sedan, going west, collided with a Farmers' Supply truck going east, causing several persons to be injured. The Farmers' Supply truck went off the highway into the south side borrow pit and the Chevrolet sedan came to rest crosswise the highway, occupying all of the south lane of the concrete slab and a small portion of the north lane.

Immediately after this traffic mishap a Nash car driven by Captain and Mrs. Fagan, arrived at the scene and stopped on the north side of the highway, either on the concrete slab or the gravel shoulder. The Fagan car, facing west and with its headlights on, stopped a short distance west of the Chevrolet sedan. The Fagans stopped so that they could render aid to the injured parties. At about the same time the Weis Butane truck going east stopped on the gravel shoulder on the south side of the highway just west of the Chevrolet sedan. Woodrow James, the driver of the Weis Butane truck, also stopped to render aid to those injured in the Chevrolet sedan-Farmers' Supply truck mishap. Woodrow James and Captain and Mrs. Fagan assisted in loading the three injured parties into a vehicle going to Marianna; and the Fagans were in the process of giving their

---

* For first appeal, see *Woodruff Electric Cooperative Corporation* v. *Weis Butane Gas Company and Woodrow James*, 221 Ark. 686, 255 S. W. 2d 420.

names and addresses to James, when the Woodruff truck came from the west and crashed into the rear of the Weis Butane truck, resulting in the claims and counter-claims that are involved in the present case.

Woodruff filed action against Weis Butane and Woodrow James for damages to the Woodruff truck, and claimed: (1) that James had stopped on the highway, without having his rear lights burning or without putting out flares; and (2) that the headlights of Captain Fagan's car caused the driver of the Woodruff truck to be unable to see the Weis Butane truck. After the venue question was settled in the first appeal, as previously mentioned, Weis Butane and Woodrow James each filed answer and cross-complaint alleging: (1) that the driver of the Woodruff truck was solely negligent, and (2) that such negligence resulted in property damage to Weis Butane and physical injuries and loss of earning capacity to Woodrow James. Trial to a Jury resulted in a verdict and judgment for Woodrow James for $6,250 and Weis Butane for $2,500. Woodruff brings this appeal and presents four points, all relating to the giving or refusing of instructions. The total instructions given by the Court consume 17 typewritten pages in the transcript.

I. *Defendant's Instruction No. 6.* This instruction, as given by the Trial Court, reads:

(A) "You are instructed that, as a general rule, the test of whether one is to be charged with negligence because of his acts in particular circumstances is to be measured by a legally established standard of conduct; that is, whether he acted as a reasonably prudent person would have acted under the same or similar circumstances.

(B) "You are instructed, however, that when one is impelled by humanitarian impulses, those human instincts which prompt people to aid others who are in danger, the law itself makes allowances within the scope of the established standard for his acts in such circumstances, and he is not held to as high a degree of care or caution as he would ordinarily be.

(C) "So, in this case, if you should find from a preponderance of the evidence that at the time of the collision complained of, Woodrow James was acting under the stress of a situation with which he was suddenly confronted, and as a result of which he might reasonably have thought others were in peril of substantial injury or loss of life, and further find that he acted as he did in an endeavor to render aid to those he reasonably thought were injured or in danger; and, *if you further find that in so acting he did as the ordinarily prudent person would have done when confronted by the same circumstances and conditions,* then you are instructed that you should take all of these factors into consideration in determining whether Woodrow James was guilty of negligence as charged in the complaint." (Paragraph letters and italics are our own.)

Appellant objected in the Trial Court to this instruction for three reasons which we now list and discuss:

1. The first objection was that the instruction ". . . ignores the fact that it is possible that the emergency had passed at the time of the accident here involved." The testimony showed that Captain and Mrs. Fagan stopped their car at practically the same time that Woodrow James stopped the Weis Butane truck; that James and the Fagans supervised the loading of the three injured persons into a passing vehicle and sent them to Marianna for medical aid; that Captain Fagan stated that he was en route to Ft. Hood, Texas, on military orders for arrival at a definite time and could not delay any longer; that he offered to give his name and address to Woodrow James to be delivered to the proper persons; and that while James and the Fagans were writing out this information the Woodruff truck drove into the rear of the Weis Butane truck causing the injuries and damages involved in this present litigation. Thus only a few minutes elapsed from the time of the arrival of James and the Fagans until the Woodruff-Weis Butane collision. Paragraph (C) of the instruction submits to the Jury the decision of the question, whether ". . . at the time of the collision complained of Woodrow

118

James was acting under the stress of a situation, . . ." etc. If Woodrow James stopped because of the "rescue doctrine" and was continuing to act for such reason then the objection to the instruction is without merit. The "rescue doctrine" is now to be discussed.

2. The second objection to the Instruction No. 6 is ". . . that it is not pertinent to the situation." We find this objection to be without merit. This Instruction No. 6 is framed to submit to the Jury the "rescue doctrine." In *Central Coal & Coke Co.* v. *Porter,* 170 Ark. 498, 280 S. W. 12, we had occasion to consider this doctrine and Mr. Justice HUMPHREYS, speaking for the Court, there said:

"Under the rescue doctrine, human life being involved, a liberal rule prevails with relation to contributory negligence. In such cases one is called upon to act quickly without much time to consider results, and is not held by the law to as strict account as when performing ordinary acts in doing his work. The law excuses him when engaged in extraordinary duties or emergencies to save the life of human beings, unless his act is rash and reckless. The rescue doctrine is well stated in syllabus No. 1 in the case of *Corbin* v. *Philadelphia,* 195 Pa 461, 45 A. 1070, 49 L. R. A. 715, 78 A. S. R. 825, which is as follows: 'A rescuer who, from the most unselfish motives, prompted by the noblest impulses that can impel man to deeds of heroism, faces deadly peril, ought not to hear from the law words of condemnation of his bravery, because he rushes into danger to snatch from it the life of a fellow creature, imperiled by the negligence of another, but he should rather listen to words of approval unless regretfully withheld on account of the unmistakable evidence of his rashness and imprudence.' "[1]

In the case at bar, Woodrow James had stopped to render aid to the injured parties. He had driven the Weis Butane truck entirely off the concrete slab and on

[1] For Annotations on the rescue doctrine see 19 A. L. R. 4 and 158 A. L. R. 189. See, also, American Law Institute's Re-Statement on "Torts," Vol. 2, § 472; and 166 A. L. R. 752.

the gravel shoulder of his extreme right side of the highway and had left all of his front, rear and side lights burning. Thus Woodrow James was certainly in the role of a rescuer and some instruction on the rescue doctrine was clearly pertinent to the situation existing at the time James received his injuries.

3. The third objection offered by appellant to the Instruction No. 6 was ". . . that it unduly singles out for consideration the humanitarian instinct of the driver of the Butane truck, Woodrow James, and Captain and Mrs. Fagan, the driver of the Nash." We find no merit in this objection. In stopping to render aid, the Fagans and Woodrow James did only what good people have been urged to do ever since the parable of the Good Samaritan as contained in Holy Writ. As previously mentioned, there were many instructions in the case. The Court had prefaced all of them by saying:

"You are instructed that you are not to single out any one of these instructions and consider it alone, but you are to take the instructions altogether and consider them altogether as one harmonious whole as the law in this case."

Then, after other instructions, the Court had told the Jury:

"If you find from a preponderance of the testimony that Woodrow James was guilty of any negligence and that such negligence was the proximate cause of the collision in which plaintiff's truck was damaged then you will find for the plaintiff, Woodruff Electric, in such amount as will fairly compensate it, under the other instructions of this Court, unless you should find that the plaintiff was guilty of negligence which caused or contributed in any degree, however slight, to the collision, in which event the plaintiff cannot recover."

The Court then gave a series of instructions on the applicable traffic Statutes; and in Instruction No. 5, said:

"The Court in these instructions has referred to certain traffic laws of Arkansas. If you find that any

party or parties violated any traffic law or laws as defined in these instructions, such violation, if any, does not constitute negligence in and of itself, but is only evidence for you to consider, along with all other evidence in the case, in determining whether such party was guilty of negligence.''

Immediately following the last quoted instruction the Court gave the Instruction No. 6 here challenged. We give all of the foregoing to show that Instruction No. 6 did not ''. . . unduly single out for consideration the humanitarian instinct. . .. .'' While the Instruction No. 6 is long and not worded as smoothly as it should have been, and certainly not to be used as a model in other cases, nevertheless it is a good instruction against the objections made by the appellant. What the instruction really says is, that what the ordinarily prudent person would do in an emergency situation is the test in rescue matters, rather than what the ordinarily prudent person would do in a non-emergency situation. The language that saves the instruction from fatal error is found in the last paragraph thereof, and heretofore italicized by us, to-wit:

''. . . and if you further find that in so acting he did as the ordinarily prudent person would have done when confronted by the same circumstances and conditions. . . .''

The conduct of the ordinarily prudent person under the same or similar circumstances was used as the yardstick by which to measure the conduct of Woodrow James.

II. *The Trial Court Refused to Give the Plaintiff's Instruction No. 12,* which reads:

''If you find that Woodrow James violated any of the State laws referred to, and you find also that the violation was the proximate cause of the collision, then your verdict should be for the plaintiff, unless you are convinced by a preponderance of the evidence that defendant was not guilty of negligence, or, by a preponder-

ance of the evidence, that plaintiff was guilty of contributory negligence."

The Trial Court was correct in refusing to give this instruction. It was a binding instruction and one designed to emphasize a claim that the burden of proof shifted in the case. Certain language of this Court in *Herring v. Bollinger*, 181 Ark. 925, 29 S. W. 2d 676, was seized on by the appellant as the basis for this instruction. But such language in the cited case was not designed to support such an instruction. Insofar as the Instruction No. 12 was correct it was covered by the defendant's Instruction No. 5 which was given and which reads:

"The Court in these instructions has referred to certain traffic laws of Arkansas. If you find that any party or parties violated any traffic law or laws as defined in these instructions, such violation, if any, does not constitute negligence in and of itself, but is only evidence for you to consider, along with all other evidence in the case, in determining whether such party was guilty of negligence."

III. *The Court Gave the Defendant's Instruction No. 8* which permitted the Jury to consider as an element of damages, Woodrow James' loss of earning, past, present and future; and the appellant complains of the instruction. The complaint alleged the loss of earnings, past, present and future. There was evidence that Woodrow James had been in the hospital and incapacitated for a considerable period of time; and the appellant introduced into the record a medical report dated May 4, 1951 (more than 60 days after the accident), which report said of Woodrow James: "Patient may return to his old occupation with a permanent loss of 5% of his earning capacity." In view of the foregoing, and also of other evidence in the record, we hold that the Trial Court committed no error in giving defendant's Instruction No. 8.

IV. *Along with other instructions on the highway safety statutes and the traffic laws, the Court gave an instruction to the Jury almost verbatim from § 75-652,*

*Ark. Stats., concerning more than three people in the driver's seat of a car.* Appellant says that this instruction should not have been given; but the evidence shows that four men were riding in the front seat of the Woodruff truck at the time it drove into the rear of the Weis Butane truck. One of the four persons testified that he could not see to the left because the head of one of his companions was in the way. In view of this testimony, and other in the record, the case of *Warren* v. *Hale,* 203 Ark. 608, 158 S. W. 2d 51, is authority for the Court to give the instruction herein challenged.

Affirmed.