MARY PIERCE ESTES, Appellant, v. FERD OWEN.—No. 36871.—168
S. W. (2d) 1052.

Court en Banc, January 29, 1943.

Rehearing Denied, March 1, 1943.

*Edwin C. Orr, Clark, Boggs, Peterson & Becker* and *Howard B. Lang, Jr.,* for appellant.

754

*A. L. Lebrecht* and *Cecil Nelkin* for respondent Owen.

 BOHLING, C.—Mary Pierce Estes sued Jewett O. Phillips and Ferd Owen, his alleged employer, for $10,000 damages on account of injuries sustained while crossing, as a pedestrian, a street intersection in Columbia, Missouri, when struck by an automobile operated by Phillips. The jury returned a verdict for the defendants. Plaintiff's motion for new trial was sustained as to defendant Phillips but was overruled as to defendant Owen. Plaintiff thereupon dismissed her action without prejudice against Phillips and prosecuted this appeal against Owen. Owen concedes error in the instructions given on behalf of defendants. However, he contends plaintiff made no case against him, principally because there was no substantial evidence upon which to predicate liability under the doctrine of respondeat superior; i. e., no evidence establishing that Phillips was an employee, servant or agent of his and, if this contention be not sustained then, no evidence that Phillips at the time of the accident was upon any business or mission of his. This case has recently reached the writer.

Phillips, who lived in Columbia, Missouri, and Owen, who lived in Kansas City, Missouri, were engaged in the horse and mule business. Owen did business under the name of Ferd Owen Horse and Mule Company and Kansas City Horse and Mule Company. The latter was incorporated and he was its president. Phillips conducted no business with the Kansas City Horse and Mule Company. Owen and Phillips were friends and the business relationship between them had existed for a number of years. Reading the testimony as a whole on the issue of the relationship between Owen and Phillips it appears that Owen's business was the sale of horses and mules for a commission of $2.50 a head at Kansas City, usually at auctions conducted on Monday mornings, and the reimbursement of any outlays incurred, such as for feeding, etc., by Owen, it being the purpose of Owen and his organizations to secure as great a volume of this business as possible. To accomplish this Owen would make arrangements with buyers of horses and mules to finance them, furnishing them with blank drafts and authorizing them to draw upon him or the Ferd Owen Horse and Mule Company for the purchase money of horses and mules and expenses incurred in connection therewith, such as traveling and hotel accommodations of the buyer and the sheltering, feeding, drayage, etc., of the animals pending their sale at the auctions. As drafts would come in against and expenses were incurred by Owen corresponding charges would be entered on the books against the individual buyer's account and when the animals were sold the account would be credited with the sale price,

756

subject to Owen's commission of $2.50. Any profits or losses resulting from the individual transactions were the profits or losses of the buyer; Owen testifying that Phillips had been unable to show a profit over a number of years and was indebted to him for $2,100; and that if the buyers make it, they paid, and if they did not, "we try to collect it off of them." Phillips used his wife's 1937 Plymouth automobile in the business and rented a barn, which had a small office, in Columbia. He had a telephone at the house but none at the barn, making use of a nearby telephone when occasion arose. He transacted his business in the country or at the barn, stating he always looked over the animals before purchasing. The evidence does not establish that he was transacting the business at his home. He might use the telephone there once-in-a-while to call someone. Phillips was free to make purchases or not and was unrestricted as to time and place for transacting business. He received no orders, no directions, no instructions and no advice of any nature from Owen. He determined the price to be paid and how, when, and where to ship the animals. He made no reports. He received no salary, was under no obligation to devote time to the business or to buy any horses and mules. The rent for the barn and some of the purchase price of the Phillips' automobile and Phillips' traveling expenses when using the automobile were paid by proceeds from drafts drawn on Owen by Phillips; but, as we read the record, there is no substantive evidence that Owen had actual knowledge his money was being used for the purchase of the automobile and he testified he did not know about Phillips renting the barn. If one of Phillips' drafts came through, it was charged against Phillips' account, seemingly without investigation. In depositions given by Phillips and Owen they made statements to the effect that Phillips was working for Owen and that the animals Phillips purchased were Owen's property. Plaintiff relies upon testimony of this nature for the application of the respondeat superior rule. But, these depositions, when the witnesses undertook to narrate the details of their business relationship, established the method of doing business first herein described. Be this as it may, we shall assume for the purposes of this review that a relationship existed warranting invoking the doctrine of respondeat superior.

The ultimate question remains whether Phillips was transacting Owen's business and Owen had the right to control Phillips' physical activities at the time of the accident. Klotsch v. P. F. Collier & Son Co. (Mo. Banc), 349 Mo. 40, 159 S. W. 2d 589, 593[3].

Phillips was plaintiff's witness and plaintiff is bound by his uncontradicted testimony. The Klotsch case, 159 S. W. 2d 589, 594[7]. He testified that on the afternoon of the accident he had been in the country looking for horses and mules but had not made any purchases; that he returned to the barn about four P. M. to attend to such matters as he had to transact there in connection with his business; that he did

not remember just what he did at the barn but was probably in the office or helping to feed; that he was not returning from his trip to the country when his automobile struck plaintiff; that he finished his work at the barn about six or six-thirty and the accident occurred while he was going home for the night, for supper; that he intended to stay at home; and that Owen under their arrangement was not required to and did not provide transportation for him.

It is clear, we think, that at the time of the accident Phillips was not upon any business or mission of Owen and that Owen had no right of control over Phillips' physical activities. Whatever the relationship between them, Phillips' work for the day had been completed. The evidence does not show how Phillips reached the barn. It does not establish any understanding that Owen was to furnish Phillips' transportation to and from the barn or in and about Columbia. So far as disclosed, Phillips' use of the automobile at the time of the accident was personal, was for his sole convenience and was not connected with any business of or mission for Owen. The Klotsch case, supra; Halsey v. Metz (Mo. App.), 93 S. W. 2d 41, 44[1, 3, 4] and cases cited; Sowers v. Howard, 346 Mo. 10, 19[3], 139 S. W. 2d 897, 901[3]; Wolf v. Terminal Rd. Ass'n, 282 Mo. 559, 563, 222 S. W. 114[2]; Schmitt v. American Press (Mo. App.), 42 S. W. 2d 969, 972[7]. Phillips was not returning from a mission for his master as was the case of the servants involved in Borgstede v. Waldbauer (Banc), 337 Mo. 1205, 1209[1], 88 S. W. 2d 373, 374[2, 3], and Brunk v. Hamilton-Brown Shoe Co., 334 Mo. 517, 528[3], 66 S. W. 2d 903, 907[6-8], cited by plaintiff.

The judgment is affirmed.

PER CURIAM:—The foregoing opinion by BOHLING, C., in Division Two is adopted as the opinion of the Court en Banc. *Tipton* and *Douglas, JJ.,* concur; *Hyde* and *Clark, JJ.,* concur in result; *Leedy, J.,* and *Ellison, C. J.,* dissent; *Gantt, J.,* absent.