Guca *v.* Pittsburgh Railways Company, Appellant.

Argued March 27, 1951. Before DREW, C. J., STERN, JONES, BELL, LADNER and CHIDSEY, JJ.

D. H. McConnell, for Pittsburgh Railways Company, appellant.

J. Roy Dickie, with him Dickie, McCamey, Chilcote, Reif & Robinson, for Borough of Bellevue, appellant.

J. Wray Connolly, with him A. W. Henderson, W. S. Moorhead, Jr. and Moorhead & Knox, for appellees.

OPINION BY MR. JUSTICE CHIDSEY, May 23, 1951:

Forest Avenue in the Borough of Bellevue runs in a northerly and southerly direction. Double street car tracks of the Pittsburgh Railways Company are located in the middle of the avenue which, proceeding in a northerly direction, is paved from curb to curb up to and including its intersection with Maryland Avenue. North of Maryland Avenue there is no paving between the rails of the street car tracks but the paving of the street continues on both sides of the tracks. At about 1 a.m. on July 14, 1946, Frank R. Guca was driving his father's automobile northerly on Forest Avenue, straddling the northbound trolley track. After he crossed

Maryland Avenue, his left wheels encountered the depressed area between the rails of the trolley track and the rough ballast and exposed ties caused the car to jolt along until its motor stalled and its lights went out. After several attempts by Guca to remove the automobile from the trolley track, he saw a northbound trolley car approaching. Standing between the rails beside the left front door of the automobile, he endeavored to flag the motorman by waving his arms. When it was evident that the trolley was not going to stop in time to avoid a collision, he ran from it in a northerly direction alongside the automobile. The trolley car ran into the automobile, threw it off the tracks to the right, and then ran over and killed Guca.

Frank Guca, the father of the deceased, instituted suit against the railways company and the borough, seeking as administrator of his son's estate damages under death and survival actions and in his own right to recover damages to his automobile. A jury rendered verdicts in favor of the plaintiff in all of the actions totalling $9,898.28. The defendants made no motions for new trial, but filed motions for judgment *non obstante veredicto*. The court refused the motions and these appeals are from the judgments entered on the verdicts.

Both the railways company and the borough contend that the deceased, Frank R. Guca, was guilty of contributory negligence as a matter of law. The borough further contends that plaintiff failed to establish any negligence on its part imposing liability. Negligence on the part of the motorman of the trolley car is practically admitted by the railways company. At least no complaint is made of the jury's finding in this regard.

Considering the facts and all reasonable inferences to be deduced therefrom most favorably to the plaintiff as we are obliged to do in light of the verdicts

(*Dodson v. Philadelphia Transportation Company,* 366
Pa. 287, 77 A. 2d 383), nothing appears in the evi-
dence to indicate that the deceased was traveling at an
immoderate or unlawful rate of speed. It is claimed
that he should have observed the abrupt change in the
paving of the street between the railway tracks be-
cause there was a street light at the intersection of
Forest and Maryland Avenues, and from 110 to 150
feet to the south of the intersection, a sign "Pavement
ends". Under the evidence the efficacy of the street
light was a matter for the jury. The "Pavement ends"
sign had no reflector buttons. Furthermore, through-
out Forest Avenue there were 25 mile speed limit signs
until Maryland Avenue was reached and there at the
northeast corner was posted a sign "End 25 mile
speed". Appellee urges, and not unreasonably, that
this constituted an invitation to a motorist to increase
rather than decrease his speed.

Appellants do not too seriously press the foregoing
contention. Rather they rely upon the deceased's ac-
tions after the automobile became stalled between the
tracks. The testimony as to what happened then comes
from Edith E. Wolff who was the only passenger, sit-
ting in the front seat. Guca attempted to start the
motor, without success. Then he got out of the car and
pushed it a short distance. He then made another at-
tempt to start the motor. Failing in this, he again at-
tempted to push the car off the unpaved track but was
unsuccessful, apparently because the left wheels had be-
come wedged against the outside rail. He then observed
a northbound trolley approaching. Standing beside the
left front door, he waved his arms as a signal to the
operator of the street car to stop, and at the same time
moved backwards toward the front of the stalled ve-
hicle. He had taken off his coat and was wearing a
white shirt and light colored trousers. The automobile
was cream colored. When it became apparent that the

street car was not going to stop, he turned and ran in a northerly direction alongside the automobile. He was at the left front fender when he was last seen by Miss Wolff. The motorman of the trolley car who admitted that he did not see the automobile until he was within 15 feet of it said he "noticed white, like a human being, jump up in front of me and started to stagger up the ties of the tracks, like something staggering, and I thought he got in the clear of me and I didn't see him any more. . .". There was no evidence that Guca was intoxicated and it was a fair inference to be drawn by the jury that he stumbled and fell as he vainly tried to escape from the oncoming trolley which traveled about 85 feet beyond the point of collision before coming to a stop. The deceased was found under its front wheels.

The presumption exists that the decedent exercised due care for his safety: *Perry v. Pittsburgh Railways Company*, 357 Pa. 608, 612, 55 A. 2d 354. The defendants contend that when the deceased saw the trolley was not going to stop, he should have moved off the track to his right. The automobile blocked him to his left and we cannot condemn his action as a matter of law in view of the emergency with which he was confronted. Contributory negligence may be declared as a matter of law only when it is so clearly revealed that fair and reasonable persons cannot disagree as to its existence: *Hinton v. Pittsburgh Railways Company*, 359 Pa. 381, 59 A. 2d 151; *Keiser v. Philadelphia Transportation Company*, 356 Pa. 366, 51 A. 2d 715; *Carden v. Philadelphia Transportation Company*, 351 Pa. 407, 41 A. 2d 667.

It was reasonable for Guca to remain on the tracks as the best vantage point under the circumstances to catch the motorman's attention and thus avoid collision with the automobile with consequent injury to his passenger, Miss Wolff, who had remained seated

in the car, and possible derailment of the street car with consequent injury to the passengers. "It is not negligence *per se* for one to voluntarily risk his own safety or life in attempting to rescue another from impending danger.": *Corbin v. Philadelphia*, 195 Pa. 461, 471, 45 A. 1070; see *DeGregorio v. Malloy*, 356 Pa. 511, 514, 52 A. 2d 195; *Zurcher v. Pittsburgh Railways Company*, 353 Pa. 212, 44 A. 2d 581. "It is not contributory negligence for a plaintiff to expose himself to danger in a reasonable effort to save a third person or the land or chattels of himself or a third person from harm.": Restatement, Torts, Section 472. The trolley car was approaching on a straightaway and its headlight was on. The decedent had reasonable cause to believe that he would succeed in signaling the motorman to stop. When at the last minute he found his efforts unsuccessful, he should not be declared guilty of contributory negligence because he chose the wrong alternative of escape. The trolley car could have been derailed and proceeded to its left. Whether or not the plaintiff was contributorily negligent was for the jury. Guca was not a volunteer who without good reason left a place of safety to go upon the street car tracks as was the situation in *Elliott v. Philadelphia Transportation Company*, 356 Pa. 643, 53 A. 2d 81. In *Coleman v. Pittsburgh, Harmony, Butler & New Castle Street Railway Company*, 251 Pa. 498, 96 A. 1051, also relied on by defendants, judgment *non obstante veredicto* was entered because of plaintiff's contributory negligence in remaining in an automobile stalled on the defendant's track on a dark and foggy night with knowledge that the automobile was on the track. This case is clearly not in point.

The defendant, Pittsburgh Railways Company, owned the fee of Forest Avenue north of Maryland Avenue and the borough contended that it did not have such control thereof as to impose upon it any

duty with respect to travelers. However, there was testimony that the extension of Forest Avenue north and beyond Maryland Avenue had been used by the public continuously and uninterruptedly for 25 years. Furthermore, there was evidence that the surface of this extension of Forest Avenue was laid down and repaired from time to time under the supervision of the Street Commission of the Borough. The question whether the borough had the duty of exercising control over this extension of Forest Avenue was properly left to the jury. See *Koerth v. Turtle Creek Borough*, 355 Pa. 121, 125, 49 A. 2d 398; *Felt v. West Homestead Borough*, 260 Pa. 11, 13, 103 A. 508; *Kniss v. Borough of Duquesne*, 255 Pa. 417, 100 A. 132; *Ackerman v. City of Williamsport*, 227 Pa. 591, 594, 76 A. 421. The borough further contended that if it had responsibility in this regard, it had properly warned the public with respect to the abrupt change in the paving between the railway tracks north of Maryland Avenue. The facts bearing on the adequacy of this warning have hereinbefore been adverted to. We believe the issue was properly submitted to the jury as bearing on the question of Guca's contributory negligence. Under the view which we take on the question of the borough's negligence, it is unnecessary to further discuss the evidence in this respect.

Assuming that the borough had inadequately warned the traveling public of the abrupt change in the paving, such negligence on its part was not a proximate cause of the accident. Forest Avenue ran in a straight direction from a point 400 to 500 feet south of Maryland Avenue to the scene of the accident, which occurred about 100 feet north of the intersection. At this point the avenue gradually curved to the left, but under the evidence the automobile was within the range of the trolley's headlight which on high beam gave visibility for 125 feet. Miss Wolff, who remained

in the automobile, saw the trolley approaching before it reached Maryland Avenue. The automobile had remained stalled upon the track for a period of ten minutes. The motorman testified that he did not know whether he had the headlight on high beam or low beam, which gave visibility of 75 feet only, but admitted that he was required to have it on high beam upon leaving Maryland Avenue. He also admitted that he did not see the automobile until he was 15 feet from it. From the point where the motorman saw the automobile and applied his brakes to the point where he stopped was about 100 feet. He was making his last trip and was on the way to the car barn.

In determining what is proximate cause, the true rule is that the injury must be the natural and probable consequence of the negligence—such a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the wrongdoer as likely to flow from his act: *Irwin Savings & Trust Company v. Pennsylvania Railroad Company*, 349 Pa. 278, 37 A. 2d 432; *Schwartz v. Jaffe*, 324 Pa. 324, 188 A. 295. While the borough council in the exercise of ordinary intelligence and prudence could foresee that inadequate warning of the change in paving might result in damage to an automobile and its occupants, and even that it might become stalled thereon, it was not required to foresee the extraordinary negligence of the motorman of the trolley car who failed to see the automobile until he was 15 feet from it, although the trolley approached on a straight stretch with its lights affording visibility of 125 feet. In *Irwin Savings & Trust Company v. Pennsylvania Railroad Company*, supra, the Court quoted as follows from *Passenger Railway Company v. Trich*, 117 Pa. 390, 399, 11 A. 627: " 'But things or results which are only possible cannot be spoken of as either probable or natural. For the latter are those things or events which

are likely to happen and which for that reason should be foreseen. Things which are possible may never happen, but those which are natural or probable are those which do happen, and happen with such frequency or regularity as to become a matter of definite inference. To impose such a standard of care as requires, in the ordinary affairs of life, precaution on the part of individuals against all the possibilities which may occur, is establishing a degree of responsibility quite beyond any legal limitations which have yet been declared.' "

In our opinion, therefore, the negligence of the motorman intervened and superseded that of the borough, thereby relieving the latter from liability in this action.

The judgment against Pittsburgh Railways Company is affirmed; the judgment against the Borough of Bellevue is set aside and here entered in its favor. Justice BELL files dissenting opinion.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

It was neither prudent nor necessary for the deceased to go on to or to remain within the trolley tracks in order to signal the approaching trolley to stop. Furthermore, the emergency was created by the deceased and when he saw the trolley was not going to stop he had ample time to get off the tracks. I would hold the deceased guilty of contributory negligence as a matter of law and would here enter judgment n.o.v. for both defendants.