MARY ELIZABETH ALFORD, ADMINISTRATRIX OF THE ESTATE OF CHARLES S. ALFORD, JR., DECEASED, v. MELVERT WASHINGTON AND THE CITY OF KINSTON, A MUNICIPAL CORPORATION.

(Filed 2 December, 1953.)

**1. Pleadings § 15—**

A demurrer admits for its purpose the truth of the allegations of fact set forth in the complaint as well as relevant inferences of fact necessarily deducible therefrom, but not conclusions of law.

**2. Electricity § 7—Any negligence in maintenance of wire and poles held insulated by negligence of motorist causing collision.**

The allegations of the complaint were to the effect that defendant municipality owned its electric power and lighting system, and maintained at an intersection poles in close proximity to the street, that the street light was suspended from the poles and the wires carrying a high voltage of electricity were uninsulated and insecurely fastened, so that upon the occurrence of an accident at the intersection causing one of the cars to strike one of the poles, a wire fell across one of the cars, and that plaintiff's intestate in seeking to rescue the occupants of the car after the accident was electrocuted. *Held:* Even conceding negligence on the part of the city, such negligence was insulated by the intervening act of the driver of the car whose negligence proximately caused the accident, and demurrer was properly sustained.

**3. Negligence § 7—**

Where the original negligence would not cause injury except for the intervening wrongful act, neglect or default of a responsible third person, which could not have been foreseen, the original negligence is insulated.

**4. Municipal Corporations § 12—**

A municipal corporation engaged in the business of supplying electricity for profit is liable as a private corporation for injuries to third parties proximately caused by its negligence in respect thereto.

**5. Electricity § 7—**

The duty of a power company to keep its high voltage wires insulated applies only to places where people reasonably may be expected to come in contact with the wires.

**6. Same: Negligence § 9½—**

A power company is not required to anticipate that a motorist will negligently run into its poles and thus cause an uninsulated wire to fall and endanger persons at the scene, since a person is not under duty to anticipate negligence on the part of others.

**7. Negligence § 7—**

Acts transpiring prior to the alleged negligent act of defendant cannot be relied upon by defendant to insulate his negligence, since the principle of insulating negligence refers to acts and conduct subsequently occurring.

**8. Negligence § 11—**

A person seeking to rescue others from serious and imminent peril will not be held contributorily negligent in risking serious injury or death in attempting to effect the rescue unless the attempt is recklessly or rashly made.

**9. Same: Automobiles §§ 18c, 18d—**

Plaintiff alleged acts of negligence of one defendant proximately causing a collision at an intersection, that the collision knocked a high voltage wire from a pole across one of the cars, and that plaintiff's intestate was electrocuted when he attempted to rescue the occupants of the car. *Held:* Any negligence of the power company in the maintenance of the wires and poles preceded the alleged negligence of defendant driver and therefore could not insulate his negligence, and intestate will not be held guilty of contributory negligence as a matter of law in attempting to rescue the occupants of the car.

APPEAL by plaintiff and by defendant, Melvert Washington, respectively, from *Harris, J.,* at 15 June, 1953, Term of LENOIR.

Civil action to recover damages for alleged wrongful death,—heard upon demurrers to the complaint, filed by each of the defendants.

It appears from the complaint (1) That Charles S. Alford, Jr., intestate of plaintiff, came to his death at about 10:30 p.m., on 14 June, 1952, at the intersection of East Street and Blount Street in a populous section of the city of Kinston; that East Street runs in north-south direction, and is much used, and is a part of the State highway system, and is designated as a through street; that Blount Street runs in east-west direction, and that stop signs are erected and maintained on this (Blount) Street,— one on the south side about 25 feet west of the intersection, and another on the north side about 25 feet east of the intersection;

(2) That the city of Kinston, a municipal corporation, owns and operates within its corporate limits an electric power and lighting system, as a part of which there is a street light suspended about 15 feet above the paved surface over the approximate center of said intersection, by means of a wire attached to two poles, one of which was located a few inches from the curbing on the northeast corner of said intersection, and the other a few inches from the curbing on the southeast corner of said intersection, and that the said light was supplied with current by means of high voltage wires attached thereto and hanging over the intersection parallel to the supporting line;

(3) That the poles supporting the street lights owned, constructed and maintained by the city, including the poles supporting the light at the

intersection, were negligently located within a few inches of the paved or traveled portion of the street;

(4) That the city unlawfully and negligently failed to maintain any guards or other safety devices to protect the poles supporting the light at the intersection from contact by vehicles, including motor vehicles, which were likely to go out of control or to be knocked out of control as a result of traffic accidents which the city knew or, in the exercise of ordinary diligence should have known, were likely to occur in or near the intersection;

(5) That the city unlawfully and negligently failed to maintain adequate safety devices to protect and safeguard the high voltage wires, suspended as aforesaid, from falling or being lowered to a few feet above the paved or traveled portion of the street in the event the supporting wire or the pole supporting same should break or fall from its suspended position to the surface or near the surface of the street in said intersection;

(6) That the high voltage and supporting light wires suspended across the intersection were so unlawfully and negligently, loosely and insecurely attached to the poles located as aforesaid, as to cause them to fall to, or near the surface of the street in the intersection upon an automobile or other motor vehicle coming in contact therewith as the result of an accident in or near the intersection;

(7) That the city negligently equipped and maintained its street lighting system, including the one located at the intersection, with transmission lines from which the insulation had fallen, leaving them exposed to such an extent as to transmit current to any object, including a human being, with which the wires might come in contact.

And it is further alleged that defendants knew of the conditions above set forth; that they knew, or by the exercise of ordinary diligence should have known that motor vehicles traversing said intersection were likely to go out of control or to be involved in accidents, imperiling the occupants thereof, and to attract to the intersection and the individuals and vehicles involved, people residing or being in the vicinity thereof on such an occasion, whose life, limb and property would be imperiled by reason of the insecure, unsafe and dangerous condition there existing as a result of the unlawful and negligent manner in which the street lighting system was installed and maintained at the said intersection.

And it is also alleged that the maintenance by the city of Kinston of its street lighting system in the manner aforesaid, constitutes actionable negligence on its part, rendering it liable for such injury and damage as was proximately caused thereby.

And it is also alleged that at about 10:30 p.m. on 14 June, 1952, defendant, Washington, while proceeding westerly along Blount Street, when he knew, or in the exercise of ordinary diligence, should have known of the

conditions above described existing at the intersection, operated his automobile in unlawful, wrongful and negligent manner and respect as follows: (a) While under the influence of intoxicating beverages; (b) at a greater rate of speed than was reasonable and proper, and in a manner so as to endanger or be likely to endanger life, limb and property, in violation of law; (c) at a speed in excess of thirty-five miles per hour, in violation of speed limit at such place; (d) without bringing his automobile to a stop as he approached the intersection, and failed to yield the right of way to through traffic proceeding north and south on East Street, in violation of law at such intersection; and (e) without keeping a proper lookout, and without heeding the stop sign, when he saw, or in the exercise of ordinary diligence, should have seen the approach of a Nash sedan proceeding northwardly on East Street in said intersection or entering it, and when he knew, or in the exercise of ordinary diligence, should have known that he could not clear the said intersection without colliding with, or being struck by said Nash sedan, and when he knew, or in the exercise of ordinary diligence, should have known that a collision between his automobile and the Nash sedan would cause one or both of said motor vehicles to strike one or more of the poles supporting the street light of the city of Kinston, causing the wires or some part of them to fall, and to endanger the life, limb and property of those in the cars and other persons attracted to the scene as aforesaid; and that, while so proceeding through the intersection, in the manner aforesaid, caused his automobile to be collided with by the Nash sedan, and to be hurled against the pole which was located near the curbing at the northeast corner of the intersection, and which supported the street light,—jarring the support wires loose from the pole, thereby letting the exposed live high voltage wires, supplying current to the light, fall across or upon the Nash sedan, and charging it with electric current or voltage of such high degree as to produce instant death to plaintiff's intestate as he reached the scene of the accident and sought to rescue the entrapped occupants of the Nash sedan.

And it is further alleged that the acts of negligence on the part of the defendant, Melvert Washington, acting together and concurring with the negligence of defendant, city of Kinston, as alleged, was the direct and proximate cause of the injury and death of plaintiff's intestate, etc.

The defendant, Melvert Washington, demurred to the complaint, for that it does not state facts sufficient to constitute a cause of action against him in that: (a) There is no legal liability on his part, nor any legal duty owed by him to plaintiff's intestate, growing out of and arising from the matters and things therein set forth; (b) If he owed any legal duty to plaintiff's intestate under the facts alleged, then the same fails to contain sufficient allegations of negligence or wrongful acts on his part to constitute a cause of action; (c) From the allegations of the complaint

the sole and proximate cause of the death of plaintiff's intestate was the negligence of the city of Kinston; (d) "On the face of the complaint the plaintiff's intestate was guilty of contributory negligence as a matter of law."

And the defendant, city of Kinston, demurred to the complaint, upon similar grounds to those of defendant, Washington, set out in paragraphs (a) and (b) of his demurrer,—fitting the language to the viewpoint of the city,—and in paragraph (c) that the sole and proximate cause of death of plaintiff's intestate was the negligence of defendant Washington.

The court being of opinion that the demurrer of the city of Kinston should be sustained, so ordered, and dismissed the action as to it. Plaintiff excepted thereto, and appeals to Supreme Court and assigns error.

And the court being of opinion that the demurrer of defendant Washington should be overruled, so ordered. Defendant Washington excepted thereto, and appeals to Supreme Court, assigning error.

*Jones, Reed & Griffin for plaintiff.*
*White & Aycock for defendant Washington.*
*James & Speight and George B. Green for defendant City of Kinston.*

PLAINTIFF'S APPEAL.

WINBORNE, J. Did the court err in signing judgment sustaining the demurrer of the defendant city of Kinston? This is the question on plaintiff's appeal.

Admitting the truth of the allegations of fact set forth in the complaint, as well as relevant inferences of fact necessarily deducible therefrom, but not of conclusions of law, as is done in testing the sufficiency of a complaint to state a cause of action, when challenged by demurrer, *Ballinger v. Thomas,* 195 N.C. 517, 142 S.E. 761; *Muse v. Morrison,* 234 N.C. 195, 66 S.E. 2d 783, and numerous other cases, we are of opinion that the complaint fails to state a cause of action against the defendant city of Kinston, a municipal corporation, owning and operating an electric lighting system within its corporate limits, if it be conceded that it was acting in a proprietary capacity.

Also, if it be conceded that the city of Kinston were negligent in the respects alleged, it appears upon the face of the complaint that the injury to and death of plaintiff's intestate was "independently and proximately produced by the wrongful act, neglect, or default of an outside agency or responsible third person." *Smith v. Sink,* 211 N.C. 725, 192 S.E. 108. See also *Harton v. Telephone Co.,* 146 N.C. 429, 59 S.E. 1022; *Mintz v. Murphy,* 235 N.C. 304, 69 S.E. 2d 849; *Smith v. Grubb, ante,* 665, and numerous other cases therein cited.

There would have been no injury to intestate of plaintiff but for the intervening wrongful act, neglect or default of those in control of and operating the automobiles involved in the collision at the intersection of East and Blount Streets at the time and under the circumstances alleged, over which the defendant city of Kinston had no control, and of which the city had no knowledge.

True, a municipal corporation engaged in the business of supplying electricity for private advantage and emolument is, as to this, regarded as a private corporation, and, in such capacity, is liable to persons injured by the actionable negligence of its servants, agents and employees. *Fisher v. New Bern,* 140 N.C. 506, 53 S.E. 342; *Harrington v. Wadesboro,* 153 N.C. 437, 69 S.E. 399; *Rice v. Lumberton,* 235 N.C. 227, 69 S.E. 2d 543. *Mintz v. Murphy, supra.*

And this Court declared in *Helms v. Power Co.,* 192 N.C. 784, 136 S.E. 9, that: "Electric companies are required to use reasonable care in the construction and maintenance of their lines and apparatus. The degree of care which will satisfy this requirement varies, of course, with the circumstances, but it must always be commensurate with the dangers involved, and where the wires maintained by a company are designed to carry a strong and powerful current of electricity, the law imposes upon the company the duty of exercising the utmost care and prudence consistent with the practical operation of its business to avoid injury to those likely to come in contact with the wires."

And in *Small v. Utilities Co.,* 200 N.C. 719, 158 S.E. 385, it is said that, "Due to the deadly and latently dangerous character of electricity, the degree of care required of persons, corporate or individual, furnishing electric light and power to others for private gain, has been variously stated." Then after reciting such expressions, the Court said: "In approving these formulae, as to the degree of care required in such cases, it is not to be supposed that there is a varying standard of duty by which the responsibility for negligence is to be determined . . . The standard is always the rule of the prudent man, or the care which a prudent man ought to use under like circumstances. What reasonable care is, of course, varies in different cases and in the presence of different conditions."

Moreover, we find it stated in 18 Am. Jur. 491-2, subject Electricity, Sec. 97, "That the duty of providing insulation should be limited to those points or places where there is reason to apprehend that persons may come in contact with the wires, is only reasonable. Therefore, the law does not compel companies to insulate . . . their wires everywhere, but only at places where people may legitimately go for work, business, or pleasure, that is, where they may be reasonably expected to go. The same rule applies with equal, if not greater, force in regard to placing warning

signs." This principle is recognized by this Court in *Ellis v. Power Co.,* 193 N.C. 357, 137 S.E. 163. See also 29 C.J.S. 582—Electricity, Sec. 42.

And while it is alleged that the city of Kinston should have foreseen that motor vehicles would collide at the intersection in question, and come into contact with the light poles of the city's lighting system,—this is a conclusion that does not follow the law. "One is not under a duty of anticipating negligence on the part of others, but in the absence of anything which gives or should give notice to the contrary, a person is entitled to assume, and to act upon the assumption that others will exercise care for their own safety." 45 C.J. 705. See *Shirley v. Ayers,* 201 N.C. 51, 158 S.E. 840; *Murray v. R. R.,* 218 N.C. 392, 11 S.E. 2d 326; *Hobbs v. Coach Co.,* 225 N.C. 323, 34 S.E. 2d 211.

Hence, on plaintiff's appeal the judgment below is affirmed.

## ON DEFENDANT WASHINGTON'S APPEAL.

Did the court err in signing the judgment overruling the demurrer of the defendant Melvert Washington? This is the question on his appeal.

This appellant contends that the allegations of the complaint properly interpreted are that the city of Kinston was negligent in the construction and maintenance of the city electric lighting system, and, hence, if he were negligent as alleged, the negligence of the city insulated his negligence. However, the principle of insulating negligence does not support this contention. It relates to acts and conduct subsequently occurring. See *Harton v. Tel. Co., supra; Smith v. Sink, supra; Butner v. Spease,* 217 N.C. 82, 6 S.E. 2d 808; *Mintz v. Murphy, supra; Smith v. Grubb, supra.*

This appellant also contends that the allegations of the complaint, accepted as true, show that intestate of plaintiff was contributorily negligent as a matter of law.

True the law imposes upon a person *sui juris* the obligation to use ordinary care for his own protection, and the degree of care should be commensurate with the danger to be avoided. And since the danger from uninsulated or otherwise defective wires is proportionate to the amount of electricity so transmitted, contact with such wires should be avoided where their existence is known. Thus where a person seeing such a wire knows that it is, or may be highly dangerous, it is his duty to avoid coming in contact therewith. See 18 Am. Jur. 471, Electricity 76. Also see *Rice v. Lumberton, supra,* and *Mintz v. Murphy, supra.*

Nevertheless, the principle, sometimes designated the rescue doctrine, is applicable to the factual situation alleged in the complaint. See *Norris v. R. R.,* 152 N.C. 505, 67 S.E. 1017. 38 Am. Jur. 912, Negligence Sec. 228. 65 C.J.S. 736—Negligence Sec. 120. See also Annotations 5 A.L.R. 206, and 19 A.L.R. 4.

In the American Jurisprudence citation just made the author states: "The rule is well settled that one who sees a person in imminent and serious peril caused by the negligence of another cannot be charged with contributory negligence, as a matter of law, in risking his own life or serious injury in attempting to effect a rescue, provided the attempt is not recklessly or rashly made." To like effect is the text from C.J.S. Moreover, in the *Norris case, supra,* our own Court, in opinion by *Hoke, J.,* clearly stated and applied the principle. Hence in the light of this rule, a case for the jury is alleged in this respect.

Thus the allegations of negligence against this appealing defendant are sufficient to withstand the test of a demurrer. And, the judgment overruling his demurrer is

Affirmed.