W. J. HAMMONDS, Respondent,

v.

William D. HAVEN, Defendant,

and

DeKalb Agricultural Association, Inc., a Corporation, Appellant.

No. 44540.

Supreme Court of Missouri.

Division No. 1.

June 13, 1955.

Motion for Rehearing or for Transfer to Court en Banc Denied July 11, 1955.

Harry C. Blanton, Sikeston, Blanton & Blanton, Sikeston, of counsel, for appellant, DeKalb Agricultural Ass'n, Inc.

Limbaugh & Limbaugh, Rush H. Limbaugh, Jr., Cape Girardeau, for respondent.

WESTHUES, Judge.

Plaintiff W. J. Hammonds, respondent in this court, filed this suit to recover damages for personal injuries sustained when struck by a car driven by the defendant William D. Haven. Plaintiff also joined as a defendant the DeKalb Agricultural Association, Inc., a corporation, on the theory that Haven was the agent of the corporation and acting as such at the time plaintiff was injured. A trial resulted in a verdict for plaintiff in the sum of $20,000 against both defendants. Motions for new trial were overruled and the defendant corporation appealed.

The appealing defendant urges that the judgment against it should be reversed outright on two grounds: One, that the evidence disclosed plaintiff to have been guilty of contributory negligence as a matter of law. Two, that the evidence failed to show that defendant Haven at the time plaintiff was injured was acting as the servant of the defendant corporation. In case the court should decide against outright reversal, a new trial is sought on the basis of assignments of error pertaining to instructions.

Except as to minor details, the principal facts were not in dispute. Briefly the facts were: The defendant Haven, as District Sales Manager for the DeKalb Agricultural Association, Inc., called a meeting of the salesmen for the DeKalb Company for the night of November 22, 1952, at Dexter, Missouri. Plaintiff Hammonds, as one of these salesmen, attended the meeting. Plaintiff and also Haven lived at Cape Girardeau, Missouri. Each drove his own car to the meeting at Dexter. While the meeting was in progress, there was a severe rainstorm. The plaintiff, desiring to go home early, asked Haven if he might go home when the meeting was about over. Permission was granted and plaintiff began his drive home on State Highway No. 25. About a mile

or, so south of Advance, Missouri, plaintiff encountered a tree which had been blown down and across the roadway. Plaintiff stopped his car and after making some inspections, drove by the tree on the east shoulder of the roadway. Plaintiff parked his car a short distance north of the fallen tree. Plaintiff, thinking that the presence of the tree endangered motorists and knowing the defendant Haven would be driving over that roadway soon, prepared to warn approaching drivers. The rain had stopped but the night was very dark. It was then about 9:30 P.M. Shortly after plaintiff had parked his car, he noticed the lights of a car coming from the north. Plaintiff attempted to warn the driver but was not seen in time and the car being operated at a high rate of speed crashed through the tree and came to a stop in a ditch on the south side of the tree. The driver was not injured, but the car was damaged. This driver proved to be Father Kelly, a Catholic priest, from Malden. After some conversation between plaintiff and Father Kelly, plaintiff agreed to warn traffic coming from the south and Father Kelly went to the north side of the tree to stop traffic coming from the north. A bus coming south was stopped a short distance north of the tree. About this time, plaintiff saw a car coming north and when it was 500 or 600 feet away, plaintiff, standing about the center of the road, began to wave his arms. The driver of this car proved to be the defendant Haven. He did not see plaintiff in time to stop and the car struck plaintiff. Haven testified he was driving about 55 to 60 miles per hour; that he did not see plaintiff until he was within 50 feet or so; that he then swerved to the right; that his car skidded and struck plaintiff who had by that time reached the east shoulder of the road. The car came to a stop north of the tree and in the east ditch. Plaintiff was found near the car. He was severely injured.

Plaintiff testified that he noticed the car Haven was driving swerve right and left as it approached and that he then ran for the ditch east of the road; that when he was on the shoulder, the car struck him.

■ The first question presented is, was plaintiff guilty of negligence in attempting to warn motorists of the dangerous situation on the highway? We rule that this was a question for a jury to decide. In this case, the court submitted the question of contributory negligence to a jury and the jury found for plaintiff. The general rule applicable to the situation is stated in 65 C.J.S., Negligence, § 124, p. 736, as follows: "Under what is commonly referred to as the rescue doctrine, conduct which might otherwise be considered contributory negligence may not be so considered where a person is injured in attempting to save others from imminent danger of personal injury or death. Persons are held justified in assuming greater risks in the protection of human life where they would not be under other circumstances. One is not guilty of contributory negligence in exposing himself to danger of injury in order to rescue another from imminent danger of personal injury or death, if, under the same or similar circumstances, an ordinarily prudent person might so expose himself, or, as often expressed, if the act of intervention is not performed under such circumstances as would make it rash or reckless in the judgment of ordinarily prudent persons. This is true even though the person attempting the rescue knows that it involves great hazard to himself without certainty of accomplishing the attempted rescue and even though in attempting such rescue he thereby imperils his own life." That rule is supported by numerous authorities as will be noted in the citation of cases to the text. We call particular attention to the following cases: Rovinski v. Rowe, 6 Cir., 131 F.2d 687, loc. cit. 692(3-6); Alford v. Washington, 238 N.C. 694, 78 S.E.2d 915, loc. cit. 920(9, 10); Guca v. Pittsburgh Rys. Co., 367 Pa. 579, 80 A.2d 779, loc. cit. 781(4, 5). The same rule prevails in this state. Doran v. Kansas City, Mo.App., 237 S.W.2d 907, loc. cit. 912(5, 6).

■ It is contended that plaintiff cannot recover because he voluntarily abandoned a safe place and assumed a dangerous position. Cases cited in support of that contention do not apply to the situation in this

case. For example: The plaintiff in Chisenall v. Thompson, 363 Mo. 538, 252 S.W.2d 335, was denied a recovery because he attempted to clean a cornpicking machine by a dangerous method when a safe way was open to him. The plaintiff in the case before us with the means at hand could not have warned approaching motorists without assuming a dangerous position.

The case of Guca v. Pittsburgh Rys. Co., supra, presented a set of facts very similar to those in this case. Guca's car was stalled on street-railway tracks. In the car was a Miss Wolff. A streetcar approached. Guca attempted to warn the motorman who did not see him and Guca lost his life. The administrator sued. The court in disposing of the question of Guca's assuming a dangerous position said, 80 A.2d loc. cit. 781(4, 5): "It was reasonable for Guca to remain on the tracks as the best vantage point under the circumstances to catch the motorman's attention and thus avoid collision with the automobile with consequent injury to his passenger, Miss Wolff, who had remained seated in the car, and possible derailment of the street car with consequent injury to the passengers. 'It is not negligence, per se, for one to voluntarily risk his own safety or life in attempting to rescue another from impending danger.' Corbin v. City of Philadelphia, 195 Pa. 461, 471, 45 A. 1070, 1074, 49 L.R.A. 715".

So, in this case, we cannot hold that plaintiff was guilty of contributory negligence as a matter of law even though he stood in the center of the roadway to warn his friend, whom he expected to be traveling that way, of the danger ahead.

■ It is argued that the rescue doctrine is not applicable because the defendants were not responsible for the dangerous situation. Defendant cited cases and 65 C.J.S., Negligence, § 124, Note 16, p. 738. The paragraph reads as follows: "The rescue doctrine has been held to be applicable only where the situation which invites rescue is created by the tortious act of defendant or one for whom he is responsible,[16] and, in order to invoke the doctrine where defendant is not responsible for the peril to the one sought to be rescued, defendant must be guilty of negligence toward the rescuer after he has begun to attempt the rescue.[17]" It will be noted that what follows Note 16 is applicable to this case. After plaintiff stationed himself on the roadway to warn oncoming travelers, the defendant Haven negligently operated his car to plaintiff's injury. It is not even contended that defendant Haven was not negligent. The trial court ruled correctly in submitting the question to a jury.

■ In its second point, the defendant corporation contends the evidence failed to prove that Haven was at the time of the accident acting as the agent or servant of the company. Particular stress is given to the fact that Haven had the right to choose his own means of transportation and therefore the company had no control over his movements. That is a close question in this case. However, we are of the opinion that it was a question for a jury to decide.

That Haven was employed by the defendant company as a sales manager was an admitted fact. There was no evidence that he worked on a commission or that he was an independent contractor. The evidence justifies the inference that the company had the right to control and, in fact, did exercise a limited control over the actions of Haven with reference to his work. Note the evidence on this point as given by Haven:

"Q. What was the occasion for your calling that meeting? A. We have those meetings periodically to disseminate sales information and present our sales programs and that was a regular meeting.

"Q. The material for those meetings comes from your office, does it? A. Which office, sir, are you talking about?

"Q. The office of the company? A. Yes, sir.

"Q. By whom you are employed? A. Yes, sir.

"Q. And what company is that? A. DeKalb Agricultural Association.

"Q. That's the defendant here, the other defendant? A. Yes, sir.

"Q. And in your position is it one of your duties to call these meetings? A. Yes, sir.

"Q. And you receive orders to call those meetings from the company, do you? A. Yes, sir.

"Q. And it was as a result of the order to call that meeting that you had this particular meeting, is that right? A. Yes, sir.

\*　\*　\*　\*　\*　\*

"Q. Now, when you attended these meetings of these grain dealers you were permitted to select your own place where you were going to hold these meetings, were you not? A. Yes, sir.

"Q. And you were given, of course, the option as to when you were going to hold them? A. Within certain limits, yes.

"Q. And you could travel to these meetings and discharge your duties in any way you saw fit, couldn't you? A. Well, not exactly.

"Q. You could travel by bus or in your own car? A. That's true.

"Q. Or by train if it was convenient for you? A. Yes, sir."

■ From that evidence a finding would be justified that the company had the right of control and that Haven was subject to orders made by the defendant company. A test often applied to determine whether the relationship of master and servant exists is the right of control. 57 C.J.S., Master and Servant, § 563b, p. 276. In Restatement of the Law of Agency, Subdivision 2 of Sec. 2, p. 11, the rule is stated that "A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master." That statement of the rule

was approved in Corder v. Morgan Roofing Co., 350 Mo. 382, 166 S.W.2d 455, loc. cit. 457(2-4); see also Glynn v. M. F. A. Mut. Ins. Co., 363 Mo. 896, 254 S.W.2d 623, loc. cit. 624(1), 36 A.L.R.2d 256. The question may be asked, what was Haven's business at Dexter? The answer may be found in Haven's evidence wherein he said he was attending a meeting at Dexter for the benefit of the defendant company, disseminating sales information to the defendant's salesmen. Why was he there? Haven said he received orders from the defendant company to hold such meetings. So, on the night when plaintiff was injured, Haven was on orders from his company attending to the business of that company.

■ Defendant corporation says in the brief, "That there is no showing in this record that at the time and place in question Haven was subject to the direction and control of the DeKalb Agricultural Ass'n, Inc., with respect to his physical movements and actions, as he owned and drove his own car, had freedom of choice as to the place of holding the meetings and had the right to travel by any method of transportation he chose, by bus, in his own car, or by train." The fact that Haven had the freedom of choice as to the method of transportation is not controlling. This question was considered fully and cases were reviewed in Corder v. Morgan Roofing Co., supra, 166 S.W. 2d loc. cit. 457, 458(5, 6). The statement in the brief that Haven "had freedom of choice as to the place of holding the meetings" is not supported by the evidence. Haven testified that "within certain limits" he had such choice. The only inference to be drawn from that statement is that the company had the right of control. Haven's testimony was that the meeting at Dexter had been ordered by the defendant company. The case of Riggs v. Higgins, 341 Mo. 1, 106 S.W.2d 1, was cited in the Corder case. Defendant cited it in the brief. Language in the Riggs opinion when applied to the facts in the case before us supports plaintiff's contention. Further, in the Riggs case, Higgins, the driver of the car that injured Riggs, was an insurance salesman working on a commission. The opinion

discloses that the defendant company did not reserve the power of control over the actions of Higgins. The point must be ruled against the defendant.

■ The defendant company says that Haven on his return trip to his home from the meeting had finished his work for the company and was not at that time acting within the scope of his employment and, therefore, the defendant company was not liable for his negligence. Defendant cited Estes v. Owen, 350 Mo. 753, 168 S.W.2d 1052. In that case, 168 S.W.2d 1054, the court stated that the agent in that case was not returning home from a mission for his master. In this case, Haven was returning home from such a mission. See Brunk v. Hamilton-Brown Shoe Co., 334 Mo. 517, 66 S.W.2d 903, loc. cit. 907 (6-8), and cases there cited.

Defendant says that the court erred in giving instruction No. 2 which authorized a verdict against the defendant corporation if the jury found certain facts to be true including a finding that "the defendant De-Kalb Agricultural Association, Inc., had the right to control the activities of defendant William D. Haven." The only reason assigned is that there was no evidence to support such a finding. We disposed of this point on the merits.

■ Error was also assigned to the giving of instruction No. 1. It is urged that the instruction gave the jury a roving commission to find defendants guilty of negligence without specifying the circumstances. The negligence submitted was operation of Haven's car at a high and dangerous rate of speed under the circumstances mentioned in the evidence. There was no conflict in the evidence as to the circumstances. All witnesses agreed that a tree blocked the roadway; that it had rained; that it was very dark; that the roadway was straight for at least a half mile south of the fallen tree. The rate of speed, defendant testified, was 55 to 60 miles per hour. The instruction was proper under the facts proven.

■ In the last point briefed, the defendant assigned error to the trial court's refusal to give instruction No. 18 which covered the question of burden of proof. The court did give an instruction on the burden of proof which was in proper form. The court was justified in refusing to give two such instructions.

Finding no reversible error, we hereby affirm the judgment of the trial court.

All concur.

## On Motion for Rehearing or for Transfer to Court en Banc

### PER CURIAM.

Appellant DeKalb Agricultural Association, Inc., in the motion for rehearing or transfer to the court en banc, vigorously asserts that in our opinion we misinterpreted a question of fact and misapplied the rescue doctrine to the facts in the case.

Appellant complains of our statement in the opinion to the effect that "It is not even contended that defendant * * * was not negligent." Appellant calls our attention to the fact that, in the trial of the case, the question of Haven's being negligent was contested and instructions were submitted on that issue. In this, appellant is correct. However, the statement in our opinion was intended to apply to the issues presented for review on the appeal. As the statement of facts discloses, there was substantial evidence to prove Haven was guilty of negligence. A jury found that he was. The question was not briefed on appeal, therefore, for the purpose of the review on appeal, the question of Haven's negligence was a closed book. We should have been more specific and have stated that appellant on this appeal did not question the fact that Haven was negligent.

■ Appellant, however, says that plaintiff, being a volunteer when he undertook to warn travelers on the highway of the danger caused by the fallen tree, cannot recover for his injuries unless Haven who inflicted the injuries was guilty of wanton and willful misconduct. Appellant complains because we did not refer to a

number of cases cited in the reply brief in support of this point. We are in total disagreement with appellant's theory that to hold Haven liable plaintiff was required to show that Haven was guilty of wanton and willful misconduct.

Haven, at the time his car struck plaintiff, was required to exercise the highest degree of care. The fact that plaintiff was voluntarily attempting to warn travelers of the danger on the highway did not in any way reduce the degree of care required to be exercised by operators of motor cars on the highway. If, therefore, Haven was guilty of negligence which caused plaintiff to be injured, Haven was liable for the damage unless plaintiff was guilty of contributory negligence. The rescue doctrine, if material to any issue in the case, was only so in determining whether plaintiff was guilty of contributory negligence. That issue was submitted to a jury and the question was decided in plaintiff's favor.

Now we make brief reference to the cases cited in the reply brief which were not mentioned in the opinion. In Cooper v. Teter, 123 W.Va. 372, 15 S.E.2d 152, the defendant had placed a wrecker-truck on a highway to retrieve a car which had gone off the road. Plaintiff's decedent voluntarily undertook to direct traffic. A skidding motor car struck and killed him. The owner of the truck and not the driver of the car which killed the director of traffic was sued. It was held that there was no causal connection between the alleged negligence of the defendant in obstructing the highway and the traffic director's death. That case has no bearing on the case before us for review. If the driver of the skidding car had been sued, it would have presented a different question of law.

The other three cases cited involved questions of law which may be illustrated by referring to one of the three cases. In Richardson v. Babcock & Wilcox Co., 1 Cir., 175 F. 897, defendant-company's employees were lowering heavy tubing by means of ropes through a doorway. Plaintiff Richardson, who was not an employee but a stranger to the work, without invita-

tion undertook to assist and was injured. It was held he could not recover unless he made a showing of gross negligence. It is obvious that that class of cases is not in point on any question of law presented by the facts in the case under review.

There is no merit in the motion and it is hereby overruled.